UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

WESLEY D. HUTCHINGS, an individual,

     Plaintiff,

vs.

AMERICAN HOME ASSURANCE
COMPANY, a foreign corporation,

     Defendant.

Case No.

Circuit Court Case No.: 10-46498-02

_____/

## DEFENDANT'S NOTICE OF REMOVAL

COMES NOW the Defendant in this action, AMERICAN HOME ASSURANCE COMPANY ("American Home"), by and through its undersigned counsel and pursuant to 28 U.S.C. § 1441 *et seq.*, hereby removes that certain cause of action now pending in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, styled *WESLEY D. HUTCHINGS v. AMERICAN HOME ASSURANCE COMPANY*, Case No. 10-46498-Div. 02, to the United States District Court for the Southern District of Florida, Fort Lauderdale Division. In support of this Notice of Removal, American Home states and respectfully shows unto this Honorable Court as follows:

1.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332.

2.    This is a civil action brought by Plaintiff, Wesley D. Hutchings ("Hutchings"), seeking recovery pursuant to theories of breach of contract (Count I) and declaratory relief (Count II) regarding a claim submitted pursuant to an insurance contract between the parties and compliance with the terms and conditions of that insurance contract.

3.      At the time the action was commenced, at the present time, and at all times material to this action, Hutchings was a sui juris individual located in Broward County, Florida.

4.      At the time this action was commenced, at the present time, and at all times material to this action, American Home was, and is a foreign corporation organized and existing pursuant to the laws of the state of New York and with its principal place of business located in the State of New York.

5.      At no time material to this action were Hutchings and American Home citizens of the same state.

6.      American Home's insured in this matter, was a Florida resident at the time of the incident.  While 28 U.S.C. §1332(c)(1) provides in pertinent part that:

> ...in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business...

However, the federal courts have determined that this section, determining citizenship of an insurer only applies in those cases where the direct action brought against the insurer are the same actions which would, **and could**, be brought against the insured.  (Emphasis added).  *See Bowers v. Continental Ins. Co.* 753 F.2d 1574 (11th Cir. 1985); *Searles v. Cincinnati Ins. Co.* 998 F.2d 728 (9th Cir. 1993).  In this matter, the allegations set forth in the Complaint are by the insured and therefore the case is proper for removal in accordance with 28 U.S.C. §1332, as complete diversity exists between Hutchings and American Home.

2

6.      On or about December 6, 2010, this action was commenced in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, against American Home.  On December 16, 2010, Hutchings served its Complaint on the State of Florida Department of Financial Services. On December 20, 2010, the State of Florida Department of Financial Services electronically delivered a copy of the Complaint and Summons to American Home.  A copy of the Summons from the State of Florida Department of Financial Services is attached hereto and incorporated herein by this reference as Exhibit "1". This Notice of Removal is filed within thirty (30) days after American Home was served with a copy of Hutchings' Complaint from the State of Florida Department of Financial Services.

7.      Hutchings' Complaint, concerns a claim filed regarding damages alleging arising from the installation of "Chinese Drywall" within the home occupied by Hutchings. The Sworn Statements in Proof of Loss Submitted by Hutchings is for the total amount of One Million Six Hundred One Thousand Five Hundred Three Dollars and 65/100 ($1,601,503.65).    A copy of the Sworn Statement in Proof of Loss is attached to the Plaintiff's Complaint as Exhibit "B". Accordingly, the amount in controversy herein exceeds $75,000 exclusive of interest and costs .

8.      The pendant state claim asserted by Hutchings does not raise novel and complex issues of state law.  The pendant state claim does not substantially predominate over the claim or claims over which this Court has original jurisdiction.  The claims over which this Court has original jurisdiction have not been dismissed.  And, there are no other compelling reasons for this Court to reject jurisdiction over the pendant state claim, or to abstain from hearing the diversity claims.

9.     Copies of all pleadings and orders served upon or by American Home are attached hereto as Composite Exhibit "2" consisting of the Complaint, and Defendant's Motion to Dismiss Plaintiff's Complaint.

10.     Pursuant to 28 U.S.C. § 1446(d), American Home has provided written notice to all adverse parties and has filed a copy of this Notice of Removal with the Clerk of the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida.

11.     A copy of the Notice of Filing Notice of Removal (without the exhibits filed with the pleading in the circuit court) filed with Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida is attached hereto as Exhibit "3."[1]

**WHEREFORE**, Defendant, AMERICAN HOME ASSURANCE COMPANY, respectfully requests  this Honorable Court exercise jurisdiction over this matter.


Respectfully submitted,


BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP


s/ Scott J. Frank
SCOTT J. FRANK, ESQ.
Florida Bar No.: 0775606
777 S. Harbour Island Boulevard
Suite 500
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
sfrank@butlerpappas.com
Attorneys for Defendant,   A M E R I C A N   H O M E
ASSURANCE COMPANY

---

[1] The Notice of Filing Notice of Removal attached as Exhibit 3 to this pleading does not include the exhibits to the Notice of Removal already attached hereto, however, they are attached to the original filed with the Circuit Court.

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to David H. Simmons, Esquire, Daniel J. O'Malley, Esquire and Jeffrey S. Elkins, Esquire at de Beaubien , Knight, Simmons, Mantzaris & Neal, LLP, 332 North Magnolia Avenue, Post Office Box 87, Orlando, Florida 32802-0087

by U.S. Mail on January 12, 2011.

s/ Scott J. Frank
SCOTT J. FRANK, ESQ.



CORPORATION SERVICE COMPANY

## Notice of Service of Process

CZG / ALL
Transmittal Number: 8298082
Date Processed: 12/20/2010

| | |
|---|---|
| **Primary Contact:** | Eric Manne - 18th Floor<br>Chartis U.S.<br>175 Water Street<br>New York, NY 10038 |
| **Copy of transmittal only provided to:** | Erin Alderette |

| | |
|---|---|
| **Entity:** | American Home Assurance Company<br>Entity ID Number 0148266 |
| **Entity Served:** | American Home Assurance Company |
| **Title of Action:** | Wesley D. Hutchings vs. American Home Assurance Company, wholly owned Subsidiary of American International Group, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Broward County Circuit Court, Florida |
| **Case/Reference No:** | 10-46498 |
| **Jurisdiction Served:** | Florida |
| **Date Served on CSC:** | 12/20/2010 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | FL - Department of Financial Services on 12/16/2010 |
| **How Served:** | Electronic SOP |
| **Sender Information:** | David H. Simmons<br>407-422-4254 |

RECEIVED

AIG Commercial Insurance
Law Department

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

P&C Severity Claims
Division Counsel

DEC 2 8 2010

RECEIVED

EXHIBIT
1

**ALEX SINK**
**CHIEF FINANCIAL OFFICER**
**STATE OF FLORIDA**
Florida Department of Financial Services

10-85190

WESLEY D. HUTCHINGS, AN INDIVIDUAL

PLAINTIFF(S),

VS.

AMERICAN HOME ASSURANCE COMPANY

DEFENDANT(S).

_____/

**CASE #:** 10-46498-02
**COURT:** CIRCUIT COURT
**COUNTY:** BROWARD
**DFS-SOP#:** 10-85190

SUMMONS, IMPORTANT, COMPLAINT AND DEMAND FOR JURY TRIAL, EXHIBITS

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida.  Said process was received in my office by MAIL on the 16th day of December, 2010 and a copy was forwarded by Electronic Delivery on the 20th day of December, 2010 to the designated agent for the named entity as shown below.

    AMERICAN HOME ASSURANCE COMPANY
    LYNETTE COLEMAN   (gbarber@cscinfo.com)
    CORPORATION SERVICE COMPANY
    1201 HAYS STREET
    TALLAHASSEE, FL  32301

\* Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080.

*Alex Sink*

Alex Sink
Chief Financial Officer

cc to: Plaintiff's Representative for filing in appropriate court:

DAVID H. SIMMONS, ESQUIRE
332 NORTH MAGNOLIA AVENUE
P.O. BOX 87
ORLANDO FL 32802-0087

CYA

IN THE CIRCUIT COURT OF THE
SEVENTEENTH   JUDICIAL   CIRCUIT,
IN
AND FOR BROWARD COUNTY,
FLORIDA

CASE NUMBER: **10 - 4 6 4 9 8**

WESLEY D. HUTCHINGS, an individual,

      Plaintiff,

v.

AMERICAN HOME ASSURANCE COMPANY,
a foreign corporation and wholly owned
subsidiary of American International Group, Inc.,

      Defendant.

_____/



## <u>SUMMONS</u>

**THE STATE OF FLORIDA**

**To Each Sheriff of the State:**

      YOU ARE HEREBY COMMANDED to serve this Summons and a copy of Plaintiff's
Complaint on Defendant:

      AMERICAN HOME ASSURANCE COMPANY, a foreign corporation
      and wholly owned subsidiary of American International Group, Inc.
      c/o Florida Chief Financial Officer as RA
      Service of Process Section
      P.O. Box 6200
      Tallahassee, FL 32314-6200

      A lawsuit has been filed against you.  You have 20 calendar days after this
Summons is served on you to file a written response to the attached Complaint.  A phone
call will not protect you; your written response, including the above case number and
named parties, must be filed if you want the Court to hear your case.  If you do not file your
response on time, you may lose the case, and your wages, money, and property may
thereafter be taken without further warning from the Court.   There are other legal
requirements.   You may want to call an attorney right away.   If you do not know an

attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a carbon copy of a photocopy of your written response to the "Plaintiff's Attorney" named below:

**David H. Simmons, Esquire**
**de Beaubien, Knight, Simmons, Mantzaris & Neal, LLP**
**332 North Magnolia Avenue**
**Post Office Box 87**
**Orlando, Florida 32802-0087**
**(407) 422-2454**

DATED this _____ day of __DEC 06 2010__, 2010.

---

In accordance with the Americans with Disabilities Act, persons with disabilities needing a special accommodation to participate in this proceeding should contact Court Administration at 201 S.E. 6th Street, Fort Lauderdale, Florida 33301, Telephone (954) 831-6565 not later than seven days prior to the proceeding. If hearing impaired, (TDD) 1-800-955-8771, or Voice (V) 1-800-955-8770, via Florida Relay Service.

---

HOWARD C. FORMAN
CLERK OF THE CIRCUIT COURT

By: _____Shareaka Davis_____
Deputy Clerk
TRUE COPY
Circuit Civil

**\*\*Spanish and French versions attached hereto**
**\*\*American Disabilities Act attached hereto**

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene veinte (20) dias contados, a partir del recibo de estat notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera; si unsted desea que el tribuanl considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del case y los nombres del las partes intersadas en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser dosojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente. Si

2

no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparence en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta a la persona denomimada abajo como "Plaintiff/Plaintiff's Attorney." (Demandante o Abogado del Demandante)

## IMPORTANT

Des poursuites judiciaries ont ete enterprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette ciation pour deposer une reponse cerite a la plainte ci-jointe aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposez pas votre reponse cecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vois beins peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats on a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaingnant ou a son avocat) nomme ci-dessous.

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY,
FLORIDA

CASE NUMBER: **1 0 - 4 6 4 9 8**

**02**

WESLEY D. HUTCHINGS, an individual,

        Plaintiff,

vs.

AMERICAN HOME ASSURANCE COMPANY,
a Foreign Corporation and wholly owned
subsidiary of American International Group, Inc.

        Defendant.

_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, WESLEY DALE HUTCHINGS ("Hutchings"), brings this action against Defendant, AMERICAN HOME ASSURANCE COMPANY ("AIG"), and states as follows:

### BACKGROUND ALLEGATIONS

1.    Hutchings is an individual residing in Broward, Florida. Prior to the incidents which gave rise to this lawsuit, Hutchings resided at 7230 Lemon Grass Drive, Parkland, Florida 33076.

2.    AIG is an insurance company organized and incorporated under the laws of the state of New York. AIG is operating and regularly doing business in Broward County, Florida.

3.    This is a cause of action exceeding $15,000.00 exclusive of costs, interest, and attorneys' fees, and is otherwise within the jurisdiction of this Court.

1

```
EXHIBIT
   2
```

4.    Venue is properly laid in this Court pursuant to Chapter 47, Florida Statutes, because AIG sells insurance in Broward County, Florida.

5.    On April 24, 2007, Barbara J. Hutchings, as Trustee of the Hutchings Real Estate Trust Dated April 9, 2007 ("the Trust"), purchased from WCI Communities, Inc ("WCI"), residential property located at 7230 Lemon Glass Drive, Parkland, Florida ("the Property".

6.    At that time, the Trust accepted a Special Warranty Deed transferring the Property to the Trust.  The purchase price was $1,651,439.00.

7.    Hutchings, who holds a life estate in the Property under a Certificate of Trust, began living there in April 2007.

8.    Hutchings continues to retain full possessory rights to the Property under that Certificate of Trust.

9.    WCI developed the Parkland Gold & Country Club where the Property is located.

10.    Additionally, WCI built and/or was responsible for building the home on the Property.

11.    During construction of the home, and completely unbeknownst to Hutchings, WCI included Chinese Drywall throughout the home.

12.    Chinese Drywall is drywall that was either manufactured in China or manufactured domestically that contains recycled drywall from China.

13.    After living in the home for approximately two (2) years, in early April 2009, Hutchings learned that his home might include Chinese Drywall.

2

14.    Upon learning this information, Hutchings promptly investigated and determined that his home indeed contained Chinese Drywall.

15.    The Chinese Drywall emitted a noxious odor and dangerous chemicals, such as sulfur compounds, which corroded and caused significant damage to copper and other metal objects in Hutchings' residence including, but not limited to the electrical wiring, copper plumbing, air-conditioning coils, refrigerator tubing, electrical wires, television connections, flat-screen televisions, water lines, and other major appliances.

16.    The Chinese Drywall has destroyed the remainder of Hutchings' residence.

17.    As a direct result of the Chinese Drywall, Hutchings has been forced, often on more than one occasion, to replace numerous items in his residence.

18.    Hutchings has developed lung complications, including, but not limited to, a small airway disease in his lungs, and other health problems due to the Chinese Drywall.

19.    Hutchings has also suffered severe emotional distress as a direct and proximate result of the damage caused by the Chinese Drywall.

20.    As a direct result of the Chinese Drywall and the damages caused by it, in or about May 10, 2009, Hutchings and his family were forced to move out of his home.

21.    Since that time, Hutchings has incurred significant living expenses because he has not been able to reside at his primary residence. Such living expenses include, but are not limited to, $4,485.00 per month in rent that Hutchings is forced to pay since he cannot live in his primary residence.

3

22.   Hutchings also expended considerable amount of his own monies, totaling over $200,000.00, to remove and replace the Chinese Drywall so that he and his daughter could move back into his primary residence.

23.   Hutchings has also suffered considerable damage due to the loss of use of his home and the depreciation of value of his home due to the Chinese Drywall.

24.   Hutchings has satisfied all conditions precedent to the maintenance of this lawsuit or such conditions have been waived.

## THE INSURANCE POLICY ISSUED BY THE DEFENDANT TO WES HUTCHINGS

25.   On or about April 30, 2007, AIG sold to Hutchings the all-risk Homeowner's Insurance policy number AIG PCG 0001968407 ("the Policy"), which insured Hutchings' residence.

26.   The Policy provides a total amount of insurance of $4,377,471.00.

27.   The Policy has been renewed by Hutchings several times. As such, the Policy has been effective from April 30, 2007, until at least April 30, 2010. A true and correct copy of the Policy that was issued on April 30, 2009, and is effective from April 30, 2009, until April 30, 2010, is attached hereto and incorporated herein as Exhibit "A."

28.   On or about April 30, 2009, and as a direct and proximate result of the damage caused by the Chinese Drywall, Hutchings submitted to AIG a Sworn Statement in Proof of Loss ("Proof of Loss"). The Proof of Loss is attached hereto and incorporated herein as Exhibit "B."

29.   Hutchings, therefore, timely provided notice under the Policy.

30.   Hutchings satisfied all conditions precedent and obligations under the Policy.

4

31.    AIG, however, has denied coverage under the Policy. A true and correct copy of AIG's denial letter, dated November 12, 2009, is attached hereto and incorporated herein as Exhibit "C."

**COUNT I**
**BREACH OF CONTRACT**

32.    This is a cause of action against AIG for Breach of Contract.

33.    Hutchings realleges the allegations contained in paragraphs 1 – 31 above as if fully set forth herein.

34.    The Policy is a binding contract between AIG and Hutchings.

35.    AIG breached the terms and conditions of, and its obligations under, the Policy by denying coverage of Hutchings' claim.

36.    As a direct and proximate result of AIG's breach, Hutchings has been damaged. Such damages include, but are not limited to, the cost to replace all of the Chinese Drywall in Hutchings' residence; the extra living expenses incurred because Hutchings was forced to move out of his residence, including the cost of all assessments and dues paid by Hutchings to the Homeowners' Association covering Hutchings' residence; Hutchings' loss of use of his residence; lost rental income for the time period that Hutchings' residence was uninhabitable; the storage and removal costs incurred by Hutchings; the expenses to test whether Hutchings' residence contained Chinese Drywall; the costs to test the air quality in Hutchings' residence as a result of the Chinese Drywall; medical bills; depreciation in the value of Hutchings' residence; damage to metal, copper, and other major appliances in Hutchings' residence; the cost to remove and replace the Chinese Drywall and the cost to repair the damage caused to Hutchings' residence by the Chinese Drywall; and emotional distress.

5

WHEREFORE, Plaintiff, WESLEY DALE HUTCHINGS, respectfully requests that this Court enter a Final Judgment in his favor and against Defendant, AMERICAN INTERNATIONAL GROUP, INC., for (a) general damages, compensatory damages, special damages, and consequential damages; (b) emotional distress; (c) loss of use; pre-judgment and post-judgment interest; (d) the costs of this action; (e) attorneys' fees pursuant to Section 627.428, Florida Statutes; and (f) for any and all such other relief as this Court deems just and proper.

## COUNT II
## DECLARATORY RELIEF

37. This is an action for declaratory relief pursuant to Chapter 86, Florida Statutes, involving an amount in controversy exceeding $15,000.00, and is otherwise within the jurisdiction of this Court.

38. Hutchings realleges the allegations contained in paragraphs 1 through 31 above as if fully set forth herein.

39. Under the terms of the Policy, AIG is obligated to provide coverage for the losses caused by the installation of Chinese Drywall in Hutchings' residence.

40. Hutchings demanded that AIG perform its obligations under the Policy.

41. Based on AIG's November 12, 2009, denial letter to Hutchings, AIG denied insurance coverage as it regards the Chinese Drywall in Hutchings' residence based on (a) the Pollution or Contamination Exclusion; (b) the Gradual or Sudden Loss Exclusion; and (c) the Faulty Inadequate or Defective Planning Exclusion.

42. AIG materially breached the Policy by denying insurance coverage based on the above-listed exclusions, or any other exclusion contained in the Policy because those exclusions are inapplicable to the damage caused by the installation of the

6

Chinese Drywall in Hutchings' residence.   Additionally, those exclusions are inapplicable because the damages discussed herein are ensuing losses.

43.   AIG disagrees with the contentions of Hutchings set forth above in Paragraph 40.

44.   The above-described conflicting contentions between the parties have created an actual, present controversy between Hutchings, on the one hand, and AIG, on the other hand, which needs to be resolved by this Court.  A justiciable controversy therefore exists as to the insurance coverage the Policy provides.

45.   As a result of the above-described controversy, Hutchings is in doubt of his and AIG's respective rights under the Policy, and there is a bona fide, actual, present, and practical need for a declaration by this Court to resolve the above-described controversy between the parties.

46.   All interested parties are before the Court.

WHEREFORE, Plaintiff, WESLEY DALE HUTCHINGS, respectfully requests this Court to (a) issue a declaration that the Defendant, AMERICAN INTERNATIONAL GROUP, INC., (i) owes a duty to Hutchings to provide insurance coverage to him pursuant to the attached Proof of Loss; (ii) is required by the terms of the Policy to compensate Hutchings for the replacement of the Chinese Drywall throughout his residence; (iii) is required by the terms of the Policy to remedy all damage caused to Hutchings' residence by the Chinese Drywall; (iv) is required to compensate Hutchings for all extra living expenses he incurred as a result of the Chinese Drywall in his residence; (v) is required by the terms of the Policy to compensate Hutchings for the medical bills he has incurred as a result of the Chinese Drywall; (b) award Hutchings the

7

costs and attorneys' fees that he incurs in the prosecution of this action pursuant to Section 627.428, Florida Statutes; and (c) grant Hutchings any such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Hutchings hereby demands a trial by jury on all issues so triable.

Dated this ___12th___ day of November 2010.

DAVID H. SIMMONS
Florida Bar Number 240745
DANIEL J. O'MALLEY
Florida Bar Number 0124450
JEFFREY S. ELKINS
Florida Bar Number 0043775
de Beaubien, Knight, Simmons,
  Mantzaris & Neal, LLP
332 North Magnolia Avenue
Post Office Box 87
Orlando, Florida 32802-0087
Telephone: (407) 422-2454
Facsimile: (407) 849-1845
Attorneys for Plaintiff

8


**Private Client Group**

| | HOMEOWNERS |
|---|---|

American Home Assurance Co.
(Name of issuing company)

Renewal          Effective: 04/30/2009

# Declarations Page

Your Declarations Page shows at a glance the coverage you have and your premium. Your Declarations Page is part of your policy. Please read your policy carefully, including your Declarations Page and any attached Endorsements, for a description of your coverage.

**Policy Number:**
AIG PCG 0001968407

**Name of Insured and Mailing Address:**
Wesley Hutchings
7230 Lemon Grass Dr.
Parkland, FL 33076

**Policy Period:** 04/30/2009 - 04/30/2010
At 12:01 A.M. standard time at your mailing address shown below

**Agency Name, Address, Phone # & Code:**
LSG Insurance Partners
2369 Franklin Road
P.O. Box 3000
Bloomfield Hills, MI 48302-3000

(248) 332-3100          0050099

**YOU WILL BE BILLED SEPARATELY FOR ANY PREMIUM DUE.**
The kind of losses that are covered and any special limits or deductibles that apply, are explained in detail in your Policy.

# This policy contains a separate deductible for hurricane losses, which may result in high out-of-pocket expenses to you.

Summary of Coverage by Location:

7230 Lemon Grass Drive     Parkland, FL 33076

| COVERAGE | PAYMENT BASIS | COVERAGE LIMIT |
|---|---|---|
| House | Extended Rebuilding Cost | $1,464,118 |
| Other Permanent Structures | Extended Rebuilding Cost | $292,824 |
| Contents | Replacement Cost | $732,059 |
| Loss of Use | | $439,235 |
| Liability | | $1,000,000 |
| Medical Payments | | $10,000 |
| Rebuilding to Code (Law and Ordinance) | | $439,235 |
| Citizens Property Insurance Corporation Regular Assessment: | | $31.06 |
| Citizens Property Insurance Corporation Emergency Assessment: | | $63.03 |
| Florida Hurricane Catastrophe Fund Emergency Assessment: | | $45.00 |
| Emergency Management, Preparedness, and Assistance Trust Fund: | | $2.00 |

**Location Premium: $4,643.09**

Deductible applied to this location:
Standard (All Other Perils):     $2,500
Hurricane Deductible: $29,282          (2% of House coverage)

Inflation Guard -- The amount of coverage of the house, contents and other permanent structures for the above location will be increased annually by 7.50% applied pro rata during the Policy Period.

| | |
|---|---|
| Total Citizens Regular Assessment: | $31.06 |
| Total Citizens Emergency Assessment: | $63.03 |
| Total Florida Hurricane Catastrophe Fund Emergency Assessment: | $45.00 |

**EXHIBIT "A"**

Location Extension Schedule Premium:
                    **Total Premium:     $4,643.09**

 **Private Client Group**

HOMEOWNERS

American Home Assurance Co.
(Name of issuing company)

# Location Extension Schedule Page

Summary of Coverage by Location for Policy:   AIG PCG 0001968407

Forms and Endorsements Attached for Location: PCHO-FL (12/07), PCHO-RPN-FL (01/09), PCG-GLBA (03/06), PCHO-DWLL (9/06), PCHO-FLOODNOT (09/06), PCHO-FL-LO Notice (10/05), PCHO-FL-LO-NOA (10/05), PCHO-FRDSG (9/06), PCHO-HPD (6/05), PCHO-IEF (12/05), PCHO-CHECKLIST (10/07), PCHO-FLHD (6/05), PCHO-Loss Mitigation Discounts (07/07), PCHO-MVI-FL (07/07), PCHO-SHC-FL (09/06), PCHO-HDNOT (6/05), PCG-FWFL (01/01)



Location Extension Schedule Premium Subtotal:

**AIG** Private Client Group

## Renewal Premium Notice
### FLORIDA

Policy Number:
AIG PCG 0001968407

Policy Period: 04/30/2009 - 04/30/2010
At 12:01 A.M. standard time at your mailing address shown below

Name of Insured and Mailing Address:
Wesley Hutchings
7230 Lemon Grass Dr.
Parkland, FL 33076

Agency Name, Address, Phone # & Code:
LSG Insurance Partners
2369 Franklin Road
P.O. Box 3000
Bloomfield Hills, MI 48302-3000

(248) 332-3100          0050099

Location Address:
7230 Lemon Grass Drive
Parkland, FL 33076

The following is a breakdown of the premium charges applicable to your Florida Homeowners policy and any resulting changes, if applicable.

Your payment of the renewal premium indicates acceptance of these changes.

## Standard Coverages

| | |
|---|---|
| All Other Peril Base Premium: | $3,006.00 |
| All Other Peril Base Premium plus Adjustments: | $2,028.00 |
| Hurricane Base Premium: | $17,481.00 |
| Hurricane Base Premium plus Adjustments: | $1,636.00 |
| All Other Peril subtotal + Hurricane Premium subtotal: | $3,664.00 |
| All Other Peril subtotal + Hurricane Premium subtotal plus Additional Adjustments: | $3,664.00 |
| Liability: | $160.00 |
| Endorsement Premium: | $678.00 |

Taxes, Fees and Surcharges:
Assessments:

| | |
|---|---|
| Citizens Property Insurance Corporation Regular Assessment: | $31.06 |
| Citizens Property Insurance Corporation Emergency Assessment: | $63.03 |
| Florida Hurricane Catastrophe Fund Emergency Assessment: | $45.00 |
| Emergency Management, Preparedness, and Assistance Trust Fund: | $2.00 |



| | |
|---|---|
| Total Premium: | $4,643.09 |
| The premium adjustment for this policy due to a coverage change is: | $7,918.00- |
| The premium adjustment for this policy due to a rate increase is: | $7,425.00 |

PCHO-RPN-FL (01/09)



## Protect Against Water Damage

Water is a leading cause of property and structural damage for most homeowners. As an AIG Private Client Group policyholder, you can save on the purchase of the following AIG-approved automatic water shut-off devices.* Each is designed to minimize damage caused by leaks in supply lines or by plumbing failures.

# TAKE ADVANTAGE OF OUR
# WATER DETECTION DEVICE DISCOUNTS

### 10% off Flo-Guard®
The Flo-Guard System is designed to prevent water damage by shutting off the main water supply. The device can be activated manually with a special wall switch that comes with the system, or automatically by connecting it to a security or smart home system.

### $400 off FloLogic System™
From a single installation point on your main water line, the FloLogic System continuously monitors all water flow within your home. If a leak is detected, it shuts off the water supply and sounds an alarm. No moisture sensors are required.

### 40% off Leak Defense System
Once installed on your home's incoming water supply line, the Leak Defense System uses your pre-set parameters to monitor water flow. It can detect as little as one cup of water per hour, so leaks can be identified before major damage occurs. If the flow exceeds the limits you've set, an alarm will sound. If no one is home, the Leak Defense System will shut off water to the home automatically.

### 33% off WaterCop®
WaterCop automatic water shut-off systems automatically turn off the water when a leak has been detected. This effectively reduces the chance of water damage due to common plumbing problems. They can be activated by flood sensors, an optional remote switch or via many types of home security systems.

**Please contact your independent insurance advisor to learn more and to discuss which device is best for safeguarding your residence.**

---

* Discounts are based on the purchase price of the product only; installation costs not included.



 **Private Client Group**

AIG Private Client Group is a division of the personal lines property and casualty insurance subsidiaries of American International Group, Inc. (AIG). Insurance and services provided by member companies of AIG. Insurance products are subject to underwriter review and approval and may not be available in all jurisdictions. Services provided by third parties are not a part of the insurance policy; are not guaranteed by AIG; and may be discontinued at any time.

 **Private Client Group**

# NOTICE

## To report a claim, please contact:

## 1-888-760-9195



PCG-CL NO (06/06)

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

91222 (07/06)

 **Private Client Group**



# H O M E O W N E R S



**AIG** **Private Client Group**



H O M E O W N E R S

# HOMEOWNERS COVERAGE

## QUICK REFERENCE

Declarations Page

Your Name and Address
Transaction
Policy Period
Coverage Limits
Premium
Forms

Coverage is provided by the American International Group, Inc., member company named on the Declarations Page. Each is a stock company.

| Policy Provisions | Beginning on Page |
|---|---|
| Part I - Definitions | 1 |
| Part II - Property | 2 |
|   A. Insuring Agreement | |
|   B. Payment of a Loss | |
|   C. Additional Coverages | |
|   D. Exclusions | |
| Part III - Liability | 9 |
|   A. Insuring Agreement | |
|   B. Payment of a Loss | |
|   C. Defense Coverage and Claim Expense | |
|   D. Additional Coverages | |
|   E. Exclusions | |
| Part IV - Conditions | 12 |



The Contract together with the Declarations Page and Endorsements, if any, complete the policy.

PCHO-FL (12/07)

THIS POLICY IS NOT COMPLETE WITHOUT A DECLARATIONS PAGE

HOMEOWNERS COVERAGE - POLICY PROVISIONS

The insurance company named on your Declarations Page will provide the insurance described in this policy. You agree to pay the premium and comply with your responsibilities described in this policy.

Various provisions in this policy restrict or exclude coverage. Read the entire policy carefully to determine your rights and duties, and what is and is not covered. We have no duty to provide coverage unless there has been full compliance with policy PART IV - CONDITIONS.

## PART I - DEFINITIONS

Words with special meanings are defined here or in the part of the policy where they are used. Throughout the policy, defined terms will be bolded when used.

In this policy, the words "you", "your" and "yours" refer to the person or persons named on the Declarations Page and his or her spouse who lives in the same household. The words "we", "us", "our" and "ours" mean the insurance company named on the Declarations Page.

As used herein, a Declarations Page includes any schedule that supplements it.

Also, in this policy the words:

Aircraft means any contrivance used or designed for flight, except model or hobby craft not used or designed to carry people or cargo.

Bodily Injury means bodily harm, including resulting sickness or disease, required care, loss of services or death.

Business means a part-time or full-time trade, occupation or profession, including farming or ranching, other than incidental business.

Contents means personal property owned by, or in the possession of, you or a family member.

For any residence listed on the Declarations Page that is a condominium or cooperative, or rental unit, contents includes additions, alterations, items of real property, installations or fixtures that you paid for or acquired at your expense along with the residence. The property must be your insurance responsibility under the governing rules of the Condominium or Cooperative Association.

Damages means the sum required to satisfy any claim, covered by this policy, whether settled and agreed to in writing by us or resolved by judicial review.

Family Member means a person related to you by blood, marriage or adoption that lives in your household including a ward or foster child.

Fungi means any type or form of fungus, including but not limited to all forms of mold or mildew, and any mycotoxins, spores, scents, vapors, gas or substance, including any by-products, produced or released by fungi.

House means the owned one, two, three or four family dwelling at which you reside at, intend to reside at, or any location named on the Declarations Page that is not a condominium or a cooperative.

Hurricane means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service which:

a. Begins at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;

b. Continues for the period of time during which the hurricane conditions exist anywhere in Florida; and

c. Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

Catastrophic ground cover collapse means geological activity that results in all of the following:

a. The abrupt collapse of the ground cover;

b. A depression in the ground cover clearly visible to the naked eye;

c. Structural damage, other than settling or cracking, of a building or structure insured under this policy, including the foundation; and

d. The building or structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that building or structure.

Incidental business means a business activity that does not produce gross revenues in excess of $10,000 in any year, has no employees subject to workers' compensation or other similar disability laws, and conforms to federal, state and local laws. Incidental business includes the business of farming provided that it does not involve employment of others for more than 1,250 hours of farm work during the Policy Period, and does not produce more than $25,000 in gross annual revenues from the raising or care of animals or agriculture. Incidental business includes residences listed on the Declarations Page that you own and rent to others.

PCHO-FL (12/07)                                    1

Insured person means:

a. You or a family member;

b. An Additional Insured named in the policy;

c. Any person given permission by you or a family member to use a vehicle or watercraft covered under this policy with respect to their legal responsibility arising out of its use; or

d. A spouse. A spouse is a marriage partner. The term spouse also includes an individual registered under state law as a domestic partner of the insured person shown on the Declarations Page.

Landscaping means your trees, lawn, shrubs, and other plants, not including forestry or brush, on the grounds of your residence.

Medical expenses means reasonable charges for medical, dental, hospital, surgical, X-ray, prosthetic devices, professional nursing, ambulance, and funeral services.

Occurrence means:

a. A loss or an accident, to which this insurance applies, including continuous or repeated exposure to substantially the same general harmful conditions, which occurs during the Policy Period and results in personal injury or property damage; or

b. An offense, to which this insurance applies, including a series of related offenses, committed during the Policy Period that results in personal injury or property damage.

Other Permanent Structures means outdoor structures you own that are situated on the grounds of your residence.

Personal Injury means the following injuries, or resulting death:

a. Bodily injury;

b. Wrongful detention, false imprisonment or false arrest;

c. Shock, emotional distress, mental injury;

d. Invasion of privacy;

e. Defamation, libel or slander;

f. Malicious prosecution;

g. Wrongful entry or eviction; or

h. Assault and battery when committed with the intent of protecting persons.

Property Damage means physical injury to, destruction of, or loss of use of tangible property and the resulting loss of its use.

Reconstruction Cost means the lesser of the amount at the time of the loss required to:

a. Restore or repair a structure; or

b. Replace or rebuild a structure at the same location;

with materials of like kind and quality, whether or not repaired or replaced. Reconstruction cost does not include deduction for depreciation or any amount required for the excavation, replacement

or stabilization of land under or around a structure.

Recreational Motor Vehicle means:

a. A motorized land vehicle designed for use off public roads and not subject to motor vehicle registration or operator licensing;

b. A motorized land vehicle in dead storage at your residence; or

c. A motorized land vehicle used solely on and to service a location shown on the Declarations Page.

Residence means any of the following which is listed on the Declarations Page:

a. Any house, other permanent structures and grounds that you own;

b. Any condominium unit, cooperative, or apartment that you own or reside in; or

c. Any other type of home you rent to live in.

Residence Employee means:

a. Your employee whose duties are related to the maintenance or use of the residence premises, including household or domestic services; or

b. One who performs similar duties elsewhere not related to your business.

Watercraft means a boat or craft designed for use on, over or under water.

## PART II - PROPERTY

A. Insuring Agreement

This policy covers you against all risks of direct physical loss or damage to your house, contents and other permanent structures unless an exclusion applies.

B. Payment of a Loss

1. Amount of Coverage for Your House and Other Permanent Structures

The amount of coverage for each house and for other permanent structures at each location shown on the Declarations Page is determined by the payment basis shown on the Declarations Page:

a. *Extended Rebuilding Cost Coverage*

We will pay Extended Rebuilding Cost when shown on the Declarations Page of this policy. Extended Rebuilding Cost coverage means that for a covered loss we will pay the reconstruction cost of your house or other permanent structure, for each occurrence. If the reconstruction cost of your house exceeds the amount of coverage for your house as shown on the Declarations Page, we will pay up to 50% more than this amount of coverage, if necessary, for the reconstruction cost. If the reconstruction cost of your other permanent structures exceeds the amount of coverage for your other permanent struc-

tures as shown on the Declarations Page, we will pay up to 50% more than this amount of coverage, if necessary, for the reconstruction cost. However, if you do not repair or rebuild your house or other permanent structure at the same location, the maximum payable is the amount that we would have paid if you had repaired or rebuilt your house or other permanent structures at the same location.

b. *Replacement Cost Coverage*

We will pay Replacement Cost when shown on the Declarations Page of this policy. Replacement Cost Coverage means that for a covered loss we will pay the reconstruction cost of your house or other permanent structures, up to the coverage limit shown for that location on your Declarations Page, for each occurrence. For a covered total loss we will pay the reconstruction cost up to the coverage limit shown for that location on your Declarations Page, for each occurrence, whether or not you actually rebuild or repair your house or other permanent structures. The amount of coverage will be increased daily to reflect the current effect of inflation. At the time of a covered loss, your house and other permanent structures coverage will include any increase in the United States Consumer Price Index from the beginning of the Policy Period.

If at any time during the Policy Period, you are newly constructing your house or other permanent structures; constructing additions; or undergoing renovations equal to or in excess of the lesser of 10% of the house coverage limit or $500,000, and/or it results in your moving out of the house for any period of time, the payment basis for your house or other permanent structures is the reconstruction cost.

We may change the amount of coverage shown on the Declarations Page when the policy renews or when appraisals are conducted to reflect current costs and values.

2. Amount of Coverage For Your Contents

The coverage amount for your contents for each covered residence is listed on your Declarations Page. The amount we will pay for a covered loss will depend on where the covered loss occurs:

At a Residence:

a. If a loss occurs to contents located at a residence with contents coverage:

i. Listed on the Declarations Page of this policy:

We will pay up to the coverage limit for contents for that location, for each occurrence; or

ii. Under another Homeowners policy in force with us:

We will not pay any amount under this policy.

b. If a loss occurs to contents located at a residence that does not have contents coverage or at a house, condominium, cooperative or rental unit owned or rented by the insured person not listed on the Declarations Page of this policy or any other policy issued by us or one of our affiliated companies:

We will pay up to 10% of the highest coverage limit for contents of any single location listed in this policy, for each occurrence. Payment will be made based on the single location and will not be made under more than one policy issued by us or one of our affiliated companies.

However, contents at a newly acquired residence are not subject to this limitation for sixty (60) days after you begin to move property there.

Away from a Residence:

c. If a loss occurs to contents located away from any residence or location you own or live at:

We will pay up to the highest coverage limit for contents for any single location listed in this policy, for each occurrence. Payment will be made based on the single location and will not be made under more than one policy issued by us or one of our affiliated companies.

The most we will pay for a covered loss is the replacement cost of the contents without deduction for depreciation, whether or not repaired or replaced, up to the coverage limit..

However, the most we will pay for a covered loss is the cost to repair or replace the contents less depreciation, up to the coverage limit, if the contents are obsolete or unusable for the purpose for which they were originally intended because of their age or condition.

If, after a covered loss to both house and contents, we pay more than the coverage limit for house coverage because of Extended Rebuilding Cost, we will automatically increase the amount of contents coverage for that loss by the same percentage that we increased the amount of house coverage.

The amount of coverage for your contents will be increased daily to reflect the current effect of inflation. At the time of covered loss, your contents coverage will include any increase in the United States Consumer

Price Index from the beginning of the Policy Period.

Contents coverage includes property that is moved to another location due to renovation or repair.

3. Deductible

The deductible shown on the Declarations Page is the amount of a covered loss you will pay for each occurrence.

Your deductible shown on the Declarations Page will be reduced by any other deductible in this policy unless the deductible is a special deductible such as hurricane, wind and hail, or named storm.

4. Pairs, Sets and Parts

For a covered loss to a pair or set, we will pay whichever is less:

a. The cost to replace the lost or damaged property;

b. The cost to restore or repair the damaged property to its pre-loss condition;

c. The difference between the market value of the pair or set before the loss and after the loss; or

d. The amount of coverage.

However, we will pay you the full replacement cost of the entire pair or set if you agree to surrender the remaining article(s) of the pair or set to us.

5. Special Limits of Liability

a. The limit shown for each of the following categories is the maximum we will pay for a covered loss to that type of contents. These special limits do not increase the amount of coverage of your contents.

| | | |
|---|---|---|
| i. | Money, bank notes, money orders, drafts, checks or gold, silver or platinum bullion or ingots | $2,500 |
| ii. | Watercraft, including their outboard motors, equipment and furnishings | $5,000 |
| iii. | Trailers | $5,000 |
| iv. | Grave markers and Mausoleums | $50,000 |

b. The limit shown for each of the following categories is the maximum we will pay for a covered loss to that type of contents unless they are stored in a bank vault or bank safe deposit box, in which case we will pay up to the total amount for contents coverage listed in the policy for each occurrence. These special limits do not increase the amount of coverage of your contents.

| | | |
|---|---|---|
| i. | Stamps, Coins & Medals | $5,000 |
| ii. | Negotiable papers, securities, accounts, evidences of debt, letters of credit, notes (other than bank notes), manuscripts, passports, tickets | $5,000 |

c. We will pay up to the coverage limit for contents coverage listed in the policy for each occurrence for contents in the following categories unless they are lost, misplaced or stolen, in which case we will only pay up to the limit shown below. These special limits do not increase the amount of coverage of your contents.

| | | |
|---|---|---|
| i. | Jewelry, watches, precious stones or semi-precious stones, whether set or unset | $5,000 |
| ii. | Furs | $5,000 |
| iii. | Guns | $5,000 |
| iv. | Silverware, goldware, pewterware or trophies | $10,000 |

d. We will pay up to the total amount of contents coverage listed in the policy for each occurrence for contents in the following categories unless the loss is caused by breakage, in which case we will only pay up to the limit shown below. These special limits do not increase the amount of coverage of your contents.

| | | |
|---|---|---|
| i. | Crystal, china, porcelains, figurines, statues, sculptures, mirrors, wine bottles, glassware and similar items | $50,000 |

C. Additional Coverages

These coverages are offered in addition to the amount of coverage shown on the Declarations Page unless stated otherwise. Your deductible applies to these coverages unless stated otherwise. Exclusions are described in section D. Exclusions and limits of liability, are described in section B., 5. Special Limits of Liability apply to these coverages.

1. Additional Living Expense

As described below, under certain conditions when your residence cannot be lived in because of a covered loss to your house or, if applicable, your contents, we provide coverage for additional living expenses, which consist of extra living expenses, loss of fair rental value, and forced evacuation expenses. The maximum amount we will

4QC0017XC0019684070050090754I

pay for all additional living expenses combined for each occurrence is 30% of the house coverage if the residence where the loss occurs is a house; or 30% of the contents coverage if the residence where the loss occurs is a Condominium, Cooperative or apartment.

a. Extra Living Expense

If a covered loss makes your residence uninhabitable, we cover any reasonable increase in living expenses incurred by you to maintain your household's usual standard of living. Payment will continue for the shortest reasonable amount of time necessary to restore your residence to a habitable condition or for your household to permanently locate elsewhere. If your residence is under construction and you are living in the residence at the time of loss, extra living expenses will cease once you are restored to the condition you were just prior to the loss. We will not pay any interest for loans or increased policy premiums associated with the rebuilding of your home. However, if prior to the loss you are not living in the residence or have moved out because of construction or renovations, then extra living expenses for this location will not apply.

We will also pay reasonable expenses associated with the kenneling of your domestic animals only.

b. Fair Rental Value

If you are not able to rent out your residence, or part of your residence, that you usually rent to others because of a loss covered by this policy, we will pay the fair rental value for the reasonable amount of time necessary to restore your residence, or that part of your residence, to a habitable condition.

c. Forced Evacuation

If you are forced to evacuate your residence as a direct result of a loss or a reasonable threat of a loss covered by this policy, we will reimburse you for the reasonable increase in your living expenses necessary to maintain your household's normal standard of living for up to thirty (30) days. We also cover any loss in fair rental value for up to thirty (30) days if your residence is rented to others.

2. Assessments

We will pay up to $100,000 per occurrence for your share of an assessment charged during the Policy Period against all the members of a Homeowners, Condominium or Cooperative Association. The assessment must be as a result of a covered loss to property or as a result of liability that would be covered under this policy. We will not pay assessments charged for loss resulting from earthquake; however, we will pay your share of an assessment charged as a result of an ensuing covered loss due to theft, explosion, fire or glass breakage unless another exclusion applies. We will not pay more than $10,000 for any assessment that results from a deductible in your Association's insurance. The resultant assessment must be a result of a covered loss to property or as a result of liability that would be covered under this policy. We will not pay assessments charged for loss resulting from earthquake; however, we will pay your share of an assessment charged as a result of an ensuing covered loss due to theft, explosion, fire or glass breakage unless another exclusion applies. Your deductible does not apply to this coverage.

3. Landscaping

We will pay up to 5% of the coverage limit for the house or, if house coverage is not available, 5% of the coverage limit for the contents at the residence at which the covered loss occurs, but no more than $5,000 for any one tree, shrub or plant. Landscaping does not include forestry or brush.

We will pay only for losses caused by:

a. Aircraft;

b. Fire, lightning or explosion;

c. Riot or civil commotion;

d. A vehicle not owned or operated by someone who lives at the residence; or

e. Theft, attempted theft, vandalism or malicious mischief.

This additional coverage applies only if you repair or replace the damaged landscaping within two years after the insured structure has been repaired if it has been damaged or two years from the date of loss, whichever is greater.

4. Land

In the event of a covered loss to your house or other permanent structures we will pay for required stabilization, excavation, or replacement of land under or around your house or other permanent structures. We will pay up to 10% of the amount of a covered loss to your house or other permanent structures for this coverage.

5. Construction Materials

We cover materials and supplies owned by you at each location shown on the Declarations Page for use in the repair, alteration or construction of your residence unless stated otherwise or an exclusion applies. These payments do not increase the amount of your coverage.

6. Precautionary Repairs

After a loss covered by this policy, we will pay the reasonable expenses you incur for necessary repairs to protect your residence against further loss. These payments do not increase the amount of your coverage.

7. Debris Removal

We cover the reasonable expenses you incur to remove debris due to a covered loss and the property that caused the covered loss.

a. If your residence is a house, we will pay up to 30% of the amount of coverage for your house at this location as shown on your Declarations Page. The amount of coverage for debris removal will not be affected by any increase in the amount of house coverage caused by the application of Extended Rebuilding Cost payment basis if provided by this policy.

b. If your residence is a Condominium, Co-operative or apartment, we will pay up to 30% of the amount of coverage for your contents at this location as shown on the Declarations Page.

8. Lock Replacement

We will pay for the cost of replacing the locks in a residence listed on the Declarations Page if the keys to that residence are lost or stolen. Your deductible does not apply to this coverage.

9. Rebuilding to Code

We will pay the extra expenses to obey any law or ordinance that regulates the repair, rebuilding or demolition of damaged property caused by a covered loss subject to the following:

a. If the loss is to a house, we will pay up to 30% of the amount of coverage shown on the Declarations Page for that house;

b. If the loss is to an other permanent structure, we will pay up to 30% of the amount of coverage shown on the Declarations Page for other permanent structures at that location; or

c. If the loss is to the additions and alterations of your Condominium, Co-operative or apartment unit, we will pay up to 30% of the amount of contents coverage as shown on the Declarations Page.

10. Mine Subsidence

We cover direct loss to your house and other permanent structures caused by lateral or vertical movement of a man-made underground line or mine-related excavations.

11. Property Removal for Safekeeping

We will pay for any reasonable expenses incurred for the moving and storing of contents from a residence because the contents are in danger as a result of a covered loss.

12. Data Replacement

We will reimburse you up to $5,000 for expenses you incur as a result of a covered loss to replace lost personal data stored on a personal computer or portable computing device that you own or lease.

13. Business Property

We will pay up to $25,000 for a covered loss to business property you own or lease.

14. Fire Department Charges

We will pay for the charges imposed by law or assumed by written agreement when a fire department answers a call to save or protect a residence listed on the Declarations Page. Your deductible does not apply to this coverage.

15. Back Up of Sewers and Drains

We will pay up to the coverage limits shown on the Declarations Page for physical loss or damage to property caused by:

a. Water which backs up through sewers or drains on the residence premises. A sewer or drain is a pipe mechanically connected to the residence plumbing system, gutters or downspouts, or other drainage pipe located on the residence premises used to drain water and waste away from the residence. A backup is not due to the inability of a sewer or drain to handle the amount of rainwater, surface water or groundwater trying to enter the sewer or drain.

b. Water which overflows from a sump pump pit if such overflow results from the mechanical breakdown of the sump pump. This additional coverage is intended to cover damage caused by water that overflows the sump pit due to mechanical breakdown of the sump pump, but not damage caused by surface or groundwater before it enters the sump pit. This coverage does not apply to direct physical loss or damage of the sump pump or related equipment, which is caused by mechanical breakdown.

These payments do not increase the amount of your coverage.

16. Property of Domestic Staff and Guests

We cover the personal property of your domestic staff and guests while it is on the premises of any residence listed on the Declarations Page. These payments do not increase the amount of your coverage.

PCHO-FL (12/07)                                    6

17. Loss by Animals

We cover loss to your house, other permanent structures, and contents caused by domestic animals.

18. Arson Reward

We will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered by this policy. The $5,000 limit is the most we will pay, regardless of the number of persons providing information. This coverage is additional insurance.

19. Food Spoilage

We cover food spoilage due to a temperature change in a refrigerator or freezer caused by an interruption of the power supply, originating either on or off-premises, or due to the mechanical breakdown of refrigeration equipment at any residence you live at or own. Wine or spirits are not considered food. These payments do not increase your amount of coverage. This coverage is subject to a $250 deductible.

20. Ensuing Fungi or Bacteria

We will pay up to $10,000 for each occurrence caused by fungi or bacteria resulting from a covered loss, including:

a. The cost to remove, clean-up, remediate, contain, treat, detoxify, neutralize, fungi or bacteria;

b. The cost to tear out and replace any part of the building or other covered property as needed to gain access to the fungi or bacteria;

c. The cost of testing or monitoring of air or property to confirm the absence, presence or level of fungi or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of fungi or bacteria; and

d. The reasonable increase in living expenses incurred by you to maintain your household's usual standard of living if your residence is uninhabitable. Payment will continue for the shortest period of time necessary to restore your residence to a habitable condition.

This is the most we will pay regardless of the number of occurrences, the number of locations insured, or the number of claims-made. We will not make any additional payments for Ensuing Fungi or Bacteria under any other Additional Coverage.

These payments do not increase the amount of coverage.

21. Loss Prevention Device

After a loss is covered by this policy, we will pay for the reasonable costs you incur up to $2,500 for the installation of an approved loss prevention device to protect your residence against the same loss in the future. Approved loss prevention devices include fire alarms systems, fire suppression systems, security systems, sump pumps, automatic water shut-off devices, lightning suppression systems, back-up power systems and hail resistant roofing materials. These payments do not increase the amount of coverage.

This additional coverage only applies if the loss exceeds the location deductible.

D. Exclusions

The following exclusions apply to the Part II - PROPERTY section of your policy:

1. Pollution or Contamination

We do not cover any loss, directly or indirectly, and regardless of any cause or event contributing concurrently or in any sequence to the loss, caused by the discharge, dispersal, seepage, migration or release or escape of pollutants. Nor do we cover the cost to extract pollutants from land or water, or the cost to remove, restore or replace polluted or contaminated land or water. A "pollutant" is any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and "waste". A "contaminant" is an impurity resulting from the mixture of or contact with a foreign substance. "Waste" includes materials to be disposed of, recycled, reconditioned or reclaimed.

2. Gradual or Sudden Loss

We do not cover any loss caused by gradual deterioration, wet or dry rot, warping, smog, rust, or other corrosion. In addition, we do not cover any loss caused by inherent vice, wear and tear, mechanical breakdown or latent defect. However, we do insure ensuing covered loss unless another exclusion applies.

3. Fungi or Bacteria

We do not cover any loss caused by the presence, growth, proliferation, spread or any activity of fungi or bacteria including the cost to test for, monitor, clean-up, move, remediate, contain, treat, detoxify, neutralize or, in any way respond to, or assess the effects of fungi or bacteria.

This exclusion does not apply to:

a. Coverage provided under PART II - PROPERTY. Additional Coverage. Ensuing Fungi Or Bacteria; or

b. Ensuing covered loss unless another exclusion applies.

4. Loss by Rodents, Insects, Birds or Vermin

Rodents, insects, birds or vermin except loss to glass that is part of a building, storm door or window. However, we do insure ensuing covered loss unless another exclusion applies.

5. Structural Movement

We do not cover any loss caused by bulging, expansion, shrinking or settling, including resultant cracking, of foundation, floors, walls, patios, pavements, ceilings or roofs. However, we do insure ensuing covered loss unless another exclusion applies.

6. Surface and Ground Water Damage

We do not cover any loss caused by:

a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind; or

b. Water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, side walk, driveway, foundation, swimming pool or other structure.

This exclusion does not apply to:

a. Contents away from any residence or location you own or live at; or

b. Ensuing covered loss unless another exclusion applies.

7. Water or Ice Damage to Certain Other Permanent Structures

We do not cover loss to certain other permanent structures caused by freezing, thawing, or the pressure or weight of water or ice, whether driven by wind or not. However, we do insure ensuing covered loss unless another exclusion applies. The other permanent structures to which this exclusion applies are swimming pools, fences, tennis courts, hot tubs, patios, pavements, foundations, septic systems, retaining walls, wharves, docks, piers, bridges or bulkheads.

8. Faulty, Inadequate or Defective Planning

We do not cover any loss caused by faulty, inadequate or defective:

a. Planning, zoning, development, surveying, siting;

b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c. Materials used in repair, construction, renovation or remodeling; or

d. Maintenance;

of part or all of any property whether on or off the residence. However, we do insure ensuing covered loss unless another exclusion applies.

9. Earthquake

We do not cover any loss to your house or other permanent structures caused by earthquake. However, we do insure ensuing covered loss due to theft, fire, glass breakage or explosion unless another exclusion applies. This exclusion does not apply to Catastrophic Ground Cover Collapse.

10. Earth Movement

We do not cover any loss to your house or other permanent structures caused by earth movement including volcanic eruptions, landslides, mudflows, and the sinking, rising, or shifting of land. We do insure ensuing covered loss due to theft, fire, glass breakage or explosion unless another exclusion applies. This exclusion does not apply to Catastrophic Ground Cover Collapse.

11. Business Property

We do not cover any loss to business property. This exclusion does not apply to coverage provided under PART II - PROPERTY, Additional Coverage, Business Property.

12. Motorized Land Vehicles

We do not cover any loss to motorized land vehicles including their equipment and accessories or any electronic devices designed to be operated solely by power from the electrical system of that vehicle. However, we do cover vehicles not subject to motor vehicle registration which are:

a. Used to service any residence you own or live at;

b. Designed to assist the handicapped; or

c. Designed for recreational use off public roads.

13. Renovations and Repairs

We do not cover loss caused by renovating, refinishing or repairing any kind of contents. This exclusion does not apply to jewelry, watches, and furs.

14. Watercraft Accidents

We do not cover any loss caused by the stranding, swamping or sinking of a watercraft or its trailer, or outboard motor. We also do not cover any loss caused by collision of a watercraft other than collision with a land vehicle unless another exclusion applies.

15. Tenant Property

We do not cover any loss to property of

roomers, boarders, or other tenants.

16. Temperature or Dampness

We do not cover any loss caused by extremes of temperature, dampness or dryness of atmosphere, or water vapor to house, other permanent structures or contents.

This exclusion does not apply to:

a. Loss caused directly by rain, sleet, snow or hail; or

b. Coverage provided under PART II - PROPERTY, Additional Coverage, Food Spoilage.

17. Aircraft

We do not cover any loss to aircraft or aircraft parts.

18. Confiscation

We do not cover any loss caused by the destruction, confiscation or seizure by any government or public authority.

19. Acts of War

We do not cover any direct loss or ensuing loss to property caused by any kind of warlike action. War includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

20. Loss to Fish, Birds or Animals

We do not cover any loss to fish, birds or animals.

21. Intentional Acts

We do not cover any loss caused by any act, whose consequences could have been foreseen by a reasonable person, committed:

a. By or at the direction of you, your spouse or a family member; and

b. With the intent to cause loss or damage.

22. Dishonest Acts

We do not cover any loss caused by any dishonest or criminal act by, or at the direction of, you or any family member.

23. Nuclear Hazard

We do not cover any loss caused directly or indirectly by "nuclear hazard". Nuclear hazard means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. However, ensuing covered loss due to fire resulting from a nuclear hazard is covered unless another exclusion applies.

24. Back Up of Sewers or Drains

We do not cover any loss due to a back up or overflow of a sewer or drain including any loss that contributes to any event. This exclusion does not apply to coverage provided under PART II - PROPERTY, Additional Coverage, Back Up of Sewers and Drains.

25. Contents Under Another Policy

We do not cover any loss to contents that are insured under a private collections policy, valuable articles or similar policy not issued by us or one of our affiliated companies.

26. Uninsured Owned Location

We do not cover any loss caused directly or indirectly by wind to contents located at an owned house, condominium, or cooperative that does not have contents coverage listed on the Declarations Page of this policy or any other policy issued by us or one of our affiliated companies. This exclusion only pertains to contents which are normally kept at the uninsured owned location.

Contents at a newly acquired location are not subject to this exclusion for sixty (60) days after you begin to move contents there.

## PART III - LIABILITY

A. Insuring Agreement

We will pay damages an insured person is legally obligated to pay for personal injury or property damage caused by an occurrence covered by this policy anywhere in the world, unless stated otherwise or an exclusion applies.

B. Payment of a Loss

The most we will pay for all claims for personal injury and property damage as a result of any one occurrence is the Liability coverage limit shown on the Declarations Page of this policy. This insurance applies separately to each insured person against whom a claim is made or suit is brought, but we will not pay more than the limit shown on the Declarations Page for any single occurrence regardless of the number of insured persons, claims made or persons injured. There is no restriction to the number of occurrences during the Policy Period for which claims may be made.

Payments under provision C., Defense Coverage and Claim Expense, except a settlement payment, are in addition to the Liability coverage limit in the policy shown on the Declarations Page.

C. Defense Coverage and Claim Expense

We will pay the costs to defend an insured person against any suit seeking covered dam-

ages for personal injury or property damage, even if the suit is false, fraudulent or groundless. You may choose counsel from a panel of firms selected by us. If a panel counsel is not established in the jurisdiction where the suit is brought, we reserve the right to select counsel.

We may investigate and settle any claim or suit at our discretion.

Additionally, we will pay:

1. All court costs and expenses on judgments assessed against any insured person;

2. Reasonable expenses incurred by an insured person at our request up to a total of $10,000 for assisting us in the investigation or defense of a claim or suit;

3. The cost of bail bonds required of an insured person because of a covered loss;

4. All premiums on bonds required in a suit we defend, but not for bond amounts more than the coverage amount (we need not apply for or furnish any bond);

5. All expenses incurred by us;

6. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court, that part of the judgment which does not exceed the amount of coverage; and

7. All prejudgment interest awarded against an insured person on that part of the judgment we pay or offer to pay. We will not pay any prejudgment interest based on that period of time after we make an offer to pay the amount of coverage.

In jurisdictions where we are prevented from defending an insured person for a covered loss because of laws or other reasons, we will pay any expenses incurred with our prior written consent for the insured person's defense.

Our duty to defend any claim or suit arising out of a single occurrence ends when the amount we have paid in damages for that occurrence equals the Liability coverage limit shown on the Declarations Page of this policy.

D. Additional Coverages

1. Damaged Property

If an insured person destroys or damages other people's property we will pay the replacement cost for that property up to $10,000 per occurrence.

2. Credit Cards, Forgery, and Counterfeiting

We will pay up to a total of $10,000 for:

a. Any amount an insured person is legally obligated to pay resulting from:

i. Theft or loss of a bankcard or credit card issued in the name of you or a family member; or

ii. Loss caused by forgery or alteration of any check or negotiable instrument.

A loss will not be covered unless all the terms for using the card, check or negotiable instrument, are complied with.

b. Loss caused by accepting in good faith any counterfeit paper currency.

At our option we may defend a claim or suit against you or a family member for forgery or counterfeiting. We will defend a claim or suit against you or a family member for loss or theft of a bankcard or credit card.

3. Medical Payments to Others

Regardless of liability, we will pay the necessary medical expenses that are incurred or medically ascertained within three (3) years from the date of an accident causing bodily injury up to a total of $10,000 for each person. This coverage does not apply to you or a family member and only applies to an accident that:

a. Occurs to a person, at a residence with liability coverage listed on the Declarations Page, with permission from you or a family member to be there;

b. Arises from a condition at a residence, or at the steps, driveways or sidewalks immediately adjoining a residence, listed on the Declarations Page with liability coverage.

c. Is caused by an animal owned by or in the care of an insured person; or

d. Is caused by an insured person or a residence employee in the course of his or her employment by an insured person.

4. Limited Residence Premises Business Liability

We cover personal injury or property damage arising out of the physical condition of a residence shown on the Declarations Page when business or professional activities are legally conducted by any insured person at that residence. The most we will pay for any covered loss is the Liability coverage limit shown on the Declarations Page. Coverage is subject to the following:

a. You do not have any employees conducting business activities at your residence, who are subject to workers' compensation or other similar disability laws;

b. You are not a home day care provider; and

c. There is no other valid collectible insurance.

## E. Exclusions

This policy does not provide coverage for liability, defense costs or any other cost or expense for:

1. Motorized Land Vehicles

   Personal injury or property damage arising out of the ownership, maintenance, use, loading or unloading of any motorized land vehicle. This exclusion does not apply to recreational motor vehicles except when they are used for participation in or practice for competitive racing.

2. Aircraft

   Personal injury or property damage arising out of the ownership, maintenance, use, loading, unloading, or towing of any aircraft.

3. Watercraft

   Personal injury or property damage arising out of the ownership, maintenance, use, operation, loading or unloading of any watercraft:

   a. That is twenty-six (26) feet or more in length or fifty (50) or more horsepower and which is owned by an insured person or furnished or rented to an insured person for longer than thirty (30) days;

   b. Used for any business or commercial purpose; or

   c. Used for participation in or practice for competitive racing (except sailboats less than twenty-six (26) feet in length).

4. Workers' Compensation or Disability

   Any damages or benefits an insured person is legally obligated to provide under any workers' compensation, disability benefits, Jones Act or General Maritime Law, unemployment compensation, occupational disease or similar law. However, we do provide coverage in excess over any other insurance for damages a covered person is legally obligated to pay for bodily injury to a residence employee of a location listed on the Declarations Page which are not compensable under workers compensation, unless another exclusion applies.

5. Directors Errors or Omissions

   Personal injury or property damage arising out of any insured person's acts, errors or omissions as an officer or member of the board of directors of any corporation or organization. This exclusion does not apply to personal injury or property damage arising out of an insured person's actions for a non-profit corporation or organization or for a Condominium or Cooperative Association unless another exclusion applies.

6. Care, Custody or Control

   Property Damage to property owned by, rented to, occupied or used by, or in the care, custody or control of an insured person to the extent that the insured person is required by contract to provide insurance. This exclusion does not apply to property damage caused by fire, smoke, or explosion.

7. Insured Person

   Personal injury to an insured person under this policy.

8. Discrimination

   Personal injury arising out of actual, alleged or threatened discrimination or harassment due to age, race, national origin, color, sex, creed, handicapped status, sexual preference or any other discrimination.

9. Sexual Molestation or Corporal Punishment

   Personal injury arising out of any actual alleged or threatened by any person:

   a. Sexual molestation, misconduct or harassment;

   b. Corporal punishment; or

   c. Sexual, physical or mental abuse.

10. Transmitted Diseases

    Personal injury resulting directly or indirectly from any illness, sickness or disease transmitted intentionally or unintentionally by an insured person to anyone. We do not cover any damages for any threat of exposure or any consequences resulting from that illness, sickness, or disease.

11. Business Pursuits

    Personal injury or property damage arising out of an insured person's business property or business pursuits, investment activity or any activity intended to realize a profit for either an insured person or others. However, this exclusion does not apply to:

    a. Volunteer work for an organized charitable, religious or community group;

    b. Incidental business activity; or

    c. Limited Residence Premises Business Liability Coverage.

12. Professional Services

    Personal injury or property damage arising out of an insured person's performing or failure to perform professional services for which any insured person is legally responsible or licensed.

13. War

    Bodily injury or property damage caused directly or indirectly by war, including the following and any consequence of the following:

a. Undeclared war, civil war, insurrection, rebellion, or revolution;

b. Warlike acts by a military force or military personnel; or

c. The destruction, seizure or use of property for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

14. **Assessments**

Any assessment charged against an insured person as a member of an association, corporation or community of property owners.

15. **Contractual**

Personal injury or property damage arising from contracts or agreements, whether written or unwritten:

a. Made in connection with any insured person's business; or

b. In which the liability of others is assumed after a covered loss.

16. **Nuclear Hazard**

Personal injury or property damage caused directly or indirectly by nuclear reaction, radiation, or radioactive contamination.

17. **Intentional Acts**

Personal injury or property damage resulting from any criminal, willful, intentional or malicious act or omission by any person. We also will not cover claims for acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause, property damage or personal injury. This exclusion applies even if the injury or damage is of a different kind or degree, or is sustained by a different person, than expected or intended. This exclusion does not apply to bodily injury if the insured person acted with reasonable force to protect any person or property.

18. **Wrongful Termination**

Personal injury arising out of wrongful termination of employment.

19. **Controlled Substance(s)**

Personal injury or property damage arising out of the use, sale, manufacture, delivery or transfer or possession of a Controlled Substance(s)—as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. This exclusion does not apply to the legitimate use of prescription drugs of a person following the orders of a licensed physician.

---

| PART IV - CONDITIONS |
|---|

A. Your Duties

1. Your duty is to notify your agent or broker of a change in occupancy.

2. Your duty is to notify your agent or broker at the beginning of any renovation or construction work and throughout the work to maintain an appropriate amount of coverage and confirm that appropriate protective safeguards are in place as determined by us.

B. Your Duties After a Loss

In the event of an occurrence which is likely to involve this policy, or if you or any other insured person under this policy is sued in connection with an occurrence which may be covered under this policy, you or an insured person must:

1. Give prompt notice to us or your agent or broker.

2. Notify the police in case of loss by theft.

3. Notify the credit card or fund transfer card company in case of loss under credit card or fund transfer card coverage.

4. Protect the property from further damage. If repairs to the property are required, you must:

a. Make reasonable and necessary repairs to protect the property; and

b. Keep an accurate record of all repair expenses.

5. Provide us with bills, receipts and related documents.

6. As often as we reasonably require:

a. Show the damaged property;

b. Provide us with records and documents we request; and

c. Submit to separate examination under oath.

7. Send to us within sixty (60) days of our request, your signed sworn proof of loss which sets forth, to the best of your knowledge:

a. The time and cause of loss;

b. The interest of all others in the property;

c. Other insurance which may cover the loss;and

d. The dollar amount being claimed as your loss.

8. Provide us with the names and addresses of any known persons injured and any available witnesses.

9. Provide us with any suit papers and other documents which will help us defend any insured person.

10. Assist and cooperate with us in the conduct of the defense by helping us:

a. To make settlement;

b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an insured person;

c. To attend hearings and trials; and

d. To secure and give evidence and obtain the attendance of witnesses.

C. Policy Period and Territory

The Policy Period is stated on the Declarations Page. This policy applies to an occurrence which takes place anywhere in the world unless otherwise limited by the policy.

D. Recovery

If the insured person has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured person must do nothing after loss to impair such rights of recovery. At our request, the insured person will bring suit or transfer those rights to us and help us enforce them.

E. Assignment

No one covered under this policy may assign or turn over any right or interest in regard to the policy without our written consent.

F. Changes

No change or modification of this policy shall be effective except when made by written endorsement signed by our legal representative.

G. Concealment or Fraud

The entire policy will be void if, whether before or after a loss, you or an insured person have:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

H. Reasonable Care

You must use reasonable care to maintain heat in your residence or shut off and drain the water system or appliances if the home is vacant, unoccupied or being constructed. We do not cover any loss caused by water freezing in a plumbing, heating, or air conditioning system or household appliance if reasonable care has not been exercised.

I. Conformity to Statutes

Any provision of this policy, which is in conflict with state or local law, is amended to conform to the law.

J. Liberalization

If we broaden the coverages provided by your policy without an additional premium charge, the changes will automatically apply to your policy as of the effective date on which the changes are adopted in your state.

K. Bankruptcy or Death

The insured person's bankruptcy or insolvency shall not relieve us of any of our obligations. Further, if the insured person dies or becomes bankrupt or insolvent during the Policy Period, this policy, unless cancelled, will cover the insured person's legal representative for the remainder of the Policy Period.

L. Legal Action Against Us

No action shall be brought against us unless the insured person has complied with this policy's provisions, nor until final judgment or agreement has set the amount on the insured person's legal obligation with us. You also agree to bring any action against us within five (5) years after a loss occurs, but not until thirty (30) days after proof of loss has been filed and the amount of loss has been determined. No one has the right to join us in any action against any insured person.

M. Mediation or Appraisals

If you and we fail to agree on the amount of loss, either may:

a. Demand a mediation of the loss in accordance with the rules established by the Florida Insurance Department. The loss amount must be $500 or more, prior to application of the deductible; or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request. The settlement in the course of the mediation is binding only if both parties agree, in writing, on a settlement and, you have not rescinded the settlement within three (3) business days after reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft we provided to you.

We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of the mediator's fee for the rescheduled conference. However, if we fail to appear at a mediation conference, we will pay your actual cash expenses you incur in attending the conference and also pay the mediator's fee for the rescheduled conference.

b. Demand an appraisal of the loss. In this event, each party will choose a competent appraiser within twenty (20) days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within fifteen (15) days, you or we may request that the choice be made by a judge of a court of record in the state, where the

"residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

Each party will:
1. Pay its own appraiser; and
2. Bear the other expenses of the appraisal and umpire equally.

If, however, we demanded the mediation and either party rejects the mediation results, you are not required to submit to or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss.

N. Other Insurance

If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

O. Mortgage Clause

The word mortgagee includes trustee. If a mortgagee is named in this policy, any covered loss will be paid to you and the mortgagee as interests appear. If there is more than one mortgagee named in this policy, the order of payment will be identical to the order of precedence.

If your claim is denied, the denial will not apply to a valid claim submitted by the mortgagee if they:
1. Notify us of any change in ownership or substantial change in risk of which they are aware;
2. Pay any premium due on this policy or on demand if you have neglected to pay the premium; and
3. Submit a sworn statement of loss within sixty (60) days after receiving notice from us of your failure to do so.

If your policy is cancelled or not renewed by us, the mortgagee will be notified in writing at least ten (10) days before the cancellation or nonrenewal takes effect.

If we deny payment to you but pay the mortgagee:
1. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or
2. At our option, we may pay the mortgagee the entire principal on the mortgage plus any accrued interest. In this event we will receive a full assignment and transfer of the mortgage and all securities held as

collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount under the mortgagee's claim.

If we cancel your policy due to the lender's failure to pay the premium when due, the policy shall be reinstated.

P. Your Cancellation

You may cancel this policy or any part of it at any time by notifying us in writing of the future date that the cancellation is to take effect.

Q. Our Cancellation

We may cancel this policy subject to the following provisions:
1. When this policy has been in effect for ninety (90) days or less:
   a. We may cancel immediately with no written notice if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements.
   b. We may cancel with twenty (20) days notice for any reason, except we may not cancel:
      i. On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the insured person has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the covered property; or
      ii. On the basis of filing of claims for partial loss caused by sinkhole activity or clay shrinkage, the total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or
      iii. You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.
2. When this policy has been in effect for more than ninety (90) days, we may cancel with one hundred (100) days notice:
   a. If there has been a material misstatement;
   b. If the risk has changed substantially since the policy was issued;
   c. In the event of failure to comply with underwriting requirements established by us within ninety (90) days of the effective date of coverage;
   d. If the cancellation is for all insured persons under policies of this type for a given class of insured person(s);

40000120C001908401005009901546

e. On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate, by claims frequency or otherwise, that the insured person has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the covered property; or

f. On the basis of a single claim which is the result of water damage if we can demonstrate, by claims frequency or otherwise, that the insured person has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the covered property, or

g. On the basis of filing of claims for partial loss caused by sinkhole activity or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim or on the basis of the risk associated with the occurrence of such a claim, if:

i. The total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or

ii. You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

3. Nonpayment of Premium

If you fail to pay the premium by the date it is due we may cancel this policy with ten (10) days notice, whether the premium is due to us, to our agent, or under any finance or credit plan.

4. State of Emergency

If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the residence has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency;

We may cancel this policy subject to the following reasons, (with respect to the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the house or other permanent structures or the contents located at a residence), by letting you know in writing of the date cancellation takes effect:

a. We may cancel this policy with 10 days notice if you fail to pay the premium by the date it is due, whether the premium is due to us, to our agent, or under any finance or credit plan;

b. We may cancel this policy with 45 days notice if:

i. There has been a material misstatement or fraud related to the claim;

ii. We determine that you have unreasonably caused a delay in the repair of the house or other permanent structures or the contents; or

iii. The claim has exceeded its applicable limits,

If the date of cancellation becomes effective during a hurricane, the date of cancellation will not become effective until the end of the hurricane.

5. Between June 1 and November 30

We will provide the following notice:

(a) If the date of cancellation becomes effective on or after December 1 and before June 1, we will let you know at least 100 days before the date cancellation takes effect; or

(b) If the date of cancellation becomes effective on or after June 1 and before December 1, we will let you know:

(i) At least 100 days before the date cancellation takes effect; or

(ii) By June 1;

whichever is earlier.

To cancel this policy we must notify you in writing. This notice will be mailed to you at the last mailing address shown on the Declarations Page. This notice will include the date the cancellation is to take effect and the reason for the cancellation. Proof of mailing will be sufficient proof of notice.

If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within 15 days after the date of cancellation takes effect The unearned premium will be computed pro rata for the unexpired term of the policy.

R. Nonrenewal

We may elect not to renew this policy. We may do so by delivering to you or mailing to you at your mailing address shown on the Declarations Page, written notice, together with the specific reasons for non-renewal, at least ninety (90) days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

However, we will not non-renew this policy:

a. On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the insured person has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the covered property; or

b. On the basis of a single claim which is the result of water damage unless we can

demonstrate, by claims frequency or otherwise, that the insured person has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the covered property; or

c. On the basis of filing of claims for partial loss caused by sinkhole activity or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim or on the basis of the occurrence of such a claim. However, we may elect not to renew this policy if:

   i. The total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or

   ii. You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

### State of Emergency

If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the residence has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency;

During the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the house or other permanent structures or the contents located at a residence, we may elect not to renew this policy only if:

a. You fail to pay the premium by the date it is due, whether the premium is due to us, to our agent, or under any finance or credit plan;

b. There has been a material misstatement or fraud related to the claim;

c. We determine that you have unreasonably caused a delay in the repair of the house or other permanent structures or the contents; or

d. The claim has exceeded its applicable limits.

Between June 1 and November 30

We will provide the following notice:

(a) If the date of cancellation becomes effective on or after December 1 and before June 1, we will let you know at least 100 days before the date cancellation takes effect; or

(b) If the date of cancellation becomes effective on or after June 1 and before December 1, we will let you know:

   (i) At least 100 days before the date cancellation takes effect; or

   (ii) By June 1;

   whichever is earlier.

We may do so by delivering to you or mailing to you at your mailing address shown on the Declarations Page, written notice, together with the specific reasons for non-renewal, at least forty five (45) days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

If the date of nonrenewal becomes effective during a hurricane, the date of non-renewal will not become effective until the end of the hurricane and we shall be entitled to collect additional premium for the period the policy remains in effect.

S. **Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable upon the earlier of the following:

1. 20 days after we receive your proof of loss and reach written agreement with you; or

2. 60 days after we receive your proof of loss and:

   a. There is an entry of a final judgment; or

   b. There is a filing of an appraisal award or a mediation settlement with us; or

3. If payment is not paid or denied within 90 days after we receive notice of claim. However, this provision (S.3.) does not apply if factors beyond our control reasonably prevent such payment.

---

In witness whereof, we have caused this policy to be executed and attested, and if required by state law this policy shall not be valid unless countersigned by our authorized representative. .

---

American Home Assurance Company

*Elizabeth M. Tuck*
_____
Secretary

*Chn L. Engle*
_____
President

Includes copyrighted material from Insurance Services Office, Inc. with its permission.

# AIG Private Client Group

__American Home Assurance Co.__
Name of Issuing Company

This Privacy Policy relates only to policyholders who have purchased personal insurance such as private passenger automobile, homeowners, collection and personal umbrella liability insurance. If you have purchased another type of policy from another AIG member company not listed above, please contact that company to receive a copy of the relevant privacy policy.

## PRIVACY NOTICE

The member companies of American International Group, Inc. (AIG) that provide personal auto, home, collection and umbrella insurance policies recognize the importance of respecting the privacy of our policyholders and want to make sure that you know the steps we take to protect the privacy of the customer information we collect and, in some cases, disclose.

We encourage you to read the following information about how we collect, disclose and protect your information. No action is required on your part.

1. **What information do we collect?**

   The member companies of AIG that underwrite the insurance products listed above and its agencies collect only information necessary to underwrite and provide accurate insurance rates, and to maintain and improve customer service and claims handling for our policyholders. We obtain nonpublic personal information about you, our policyholder, from you in your request for a quotation of rates, applications, policy transactions, including claims, and other interactions with us, as well as from credit reporting agencies, motor vehicle departments, claim history reporting agencies and other third parties. For property insurance, we may send someone to inspect your property and verify information about the value and condition of your property. The information collected may include, for example, your name, address, birth date, phone number, e-mail address, driver's license number, accident/violation history, information about vehicle operators, mortgages, lien/lease holders, vehicle information, credit card information, credit report information, occupation and whether you own or rent your home. We obtain and use this information only in accordance with state and federal law.

2. **How do we use collected information?**

   The information we gather helps us identify who you are, manage our relationship with you, develop products and services that meet your needs, provide you with accurate rates and provide excellent customer service. We do not sell your information to other companies for any reason.

3. **What information do we disclose?**

   We may disclose information to affiliates and unaffiliated third parties for the purpose of servicing customers' insurance needs, performing business services for us or as otherwise permitted or required by law. For example, at times we disclose information about our policyholders such as name, address, telephone number, policy number and coverages to service providers for the provision of specific services such as inspections and appraisals after a claim and marketing our insurance products. For purposes of fraud prevention, we also participate in several insurance industry supported databases of reported claims and additional driver information. We may disclose information to organizations conducting actuarial or research studies and to companies that perform research and marketing services on our behalf.

4. **What security procedures are used?**

We maintain technical and organizational safeguards to protect the confidentiality of nonpublic personal information about our policyholders against (i) unauthorized access or disclosure and (ii) accidental loss, alteration, or destruction. We permit only authorized employees, who are trained in the proper handling of policyholder information, to have access to that information. We strive to ensure that the companies we use as our business partners support our commitment to privacy protection in their handling of personal data about our policyholders. We require service providers and others to keep your information strictly confidential and to use the information solely on our behalf and as directed by us, and we require them to protect this information as we would. We maintain physical, electronic and procedural safeguards to protect and safeguard your nonpublic personal information.

5. **If you are an Internet user:**

To better serve you, our websites provide information about our products. When accessing our websites, please be sure to read the Privacy Notice that appears there.

## DEDUCTIBLE WAIVER FOR LARGE LOSSES

With respect to coverage provided by this endorsement, all provisions and conditions of the policy apply unless they are changed by this endorsement.

As respects the following location(s):

7230 Lemon Grass Drive
Parkland, FL 33076

It is agreed and understood that for the premium charged Part II - PROPERTY. B. Payment of a Loss, Deductible is deleted and replaced with the following:

Deductible

The deductible shown on the *Declarations Page* is the amount of a covered loss you will pay for each occurrence. The deductible does not apply to a covered loss of more than $50,000. This waiver of deductible does not apply to:

1. Special deductibles for wind, hurricane, hail or earthquake; or
2. Separate coverage deductibles contained within the Equipment Breakdown or Fraud Safeguard endorsements.

PCHO-DWLL (09/06)

# IMPORTANT NOTICE REGARDING YOUR HOMEOWNERS POLICY

As respects the following location(s):

7230 Lemon Grass Drive                    Parkland, FL 33076

YOUR HOMEOWNERS INSURANCE POLICY DOES NOT PROVIDE COVERAGE FOR PROPERTY DAMAGE CAUSED BY FLOOD .

Flood means:

1. A general and temporary condition of partial or complete inundation of normally dry land area from:
   a. Overflow of inland or tidal waters;
   b. Unusual and rapid accumulation or runoff of surface waters from any source; or
   c. Mudflow. Mudflow means a river of liquid and flowing mud occurring on level or near-level surfaces of normally dry land areas that have not been affected by landslide, as when earth is carried by a current of water. Other earth movements, such as landslide, slope failure, or a saturated soil mass moving by liquidity down a slope, are not mudflows. Landslide means the rapid movement of a mass of soil downslope along a curved or planar failure surface, without deformation of the soil structure.

2. Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a flood as defined in 1.a. above.

If you are interested in purchasing Flood Coverage on the residence(s) listed above, your agent or broker can facilitate this purchase on your behalf. For further information, please contact your agent or broker.



PCHO-FLOODNOT (09/06)

# IMPORTANT NOTICE REGARDING YOUR HOMEOWNERS POLICY

FLORIDA STATUTE INDICATES THAT "LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE.  YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE FROM THE NATIONAL FLOOD INSURANCE PROGRAM.  WITHOUT THIS COVERAGE, YOU MAY HAVE UNCOVERED LOSSES.   PLEASE DISCUSS THESE COVERAGES WITH YOUR INSURANCE AGENT"

## FLOOD COVERAGE

YOUR HOMEOWNERS INSURANCE POLICY DOES NOT  COVER PROPERTY DAMAGE  FROM FLOODS*.  A SEPARATE POLICY OF FLOOD INSURANCE MAY BE AVAILABLE TO COVER FLOOD DAMAGE FOR AN ADDITIONAL PREMIUM FROM THE FEDERAL GOVERNMENT.    TO  OBTAIN  FURTHER  INFORMATION REGARDING THIS COVERAGE, PLEASE CALL THE NATIONAL FLOOD INSURANCE PROGRAM AT 1-800-611-6122.

\* FLOOD IS DEFINED AS  A GENERAL AND TEMPORARY CONDITION  OF  PARTIAL  OR COMPLETE  COVER  OF NORMALLY DRY LAND AREA FROM:

- THE OVERFLOW OF INLAND OR TIDAL WATERS;

- THE  UNUSUAL AND RAPID ACCUMULATION  OR RUNOFF OF SURFACE WATERS FROM ANY SOURCE;



PCHO-FL-LO Notice (10/05)

- MUDSLIDES (MUDFLOWS) THAT ARE PROXIMATELY CAUSED BY FLOODING AND ARE AKIN TO A RIVER OF LIQUID AND FLOWING MUD ON THE SURFACES OF NORMALLY DRY LAND AREAS, INCLUDING YOUR PREMISES, AS WHEN EARTH IS CARRIED BY A CURRENT OF WATER AND DEPOSITED ALONG THE PATH OF THE CURRENT.

## REBUILDING TO CODE (LAW AND ORDINANCE) COVERAGE

REBUILDING TO CODE (LAW AND ORDINANCE) COVERAGE PROVIDES EXTRA EXPENSES TO OBEY ANY LAW OR ORDINANCE THAT REGULATES THE REPAIR, REBUILDING OR DEMOLITION OF DAMAGED PROPERTY CAUSED BY A COVERED LOSS.  YOUR POLICY PROVIDES A SUBLIMIT OF THIS COVERAGE. A HIGHER LIMIT IS AVAILABLE THAT YOU MAY WISH TO PURCHASE.

**PLEASE DISCUSS THESE COVERAGES WITH YOUR INSURANCE AGENT.   WITHOUT THESE COVERAGES, YOU MAY HAVE UNCOVERED  LOSSES.**

PCHO-FL-LO Notice (10/05)

# NOTICE OF AVAILABILITY OF ADDITIONAL REBUILDING TO CODE (LAW AND ORDINANCE) COVERAGE
## FLORIDA

**THIS NOTICE OF AVAILABILITY PROVIDES YOU WITH THE OPTION TO PURCHASE ADDITIONAL REBUILDING TO CODE (LAW AND ORDINANCE) COVERAGE.**

Rebuilding to code (law and ordinance) coverage is an important coverage that provides extra expenses to obey any law or ordinance that regulates the repair, rebuilding or demolition of damaged property caused by a covered loss.

Florida law requires that Homeowner policies offer additional coverage to meet applicable laws and ordinances limited to either 25% or 50% of the dwelling limit, as selected by the policyholder, and such coverage shall apply only to repairs of the damaged portion of the structure unless the total damage to the structure exceeds 50% of the replacement cost of the structure.

Your policy provides law and ordinance coverage of up to 30% of the amount of dwelling coverage shown on the Declarations Page. In order to comply with Florida law, this Notice of Availability provides you with the option to purchase an additional 20% of the amount of dwelling coverage shown on the Declarations Page.

Please note that this additional law and ordinance coverage option does not apply to tenant, condominium or cooperative policies.

To purchase such additional law and ordinance coverage, please contact your insurance agent. Please note that additional premium will be applied to your policy if you select this additional law and ordinance coverage.



PCHO-FL-LO-NOA  10/05

## AIG  Fraud SafeGuard® Coverage

With respect to coverage provided by this endorsement, all provisions and conditions of the policy apply unless they are changed by this endorsement.

## SCHEDULE

|  | Limit of Insurance | | Deductible |
|---|---|---|---|
| Fraud, Embezzlement or Forgery | $30,000<br>$30,000 | (each event)<br>(each insured annual aggregate) | $2,500 |
| ATM Robbery | $2,500<br>$2,500 | (each insured)<br>(each insured annual aggregate) | No deductible applies |
| Stolen Identity Event | $30,000<br>$30,000 | (each event)<br>(each insured annual aggregate) | No deductible applies |

It is agreed and understood that **PART I - DEFINITIONS** has been amended to include the following:

**Forgery** means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose. Forgery will result directly from **forgery** of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in money that are:

  a. Made or drawn by or drawn upon you or a family member; or

  b. Made or drawn by one acting as your or a family member's agent;

   or that are purported to have been so made or drawn.

**Fraud or embezzlement** means:

  a. An electronic, telegraphic, cable, teletype, telefacsimile, telephone, computer, or magnetic tape instruction which purports to have been transmitted by you or a family member, but which was in fact fraudulently transmitted by someone else without your or a family member's knowledge or consent;

  b. A written instruction issued by you or a family member, which was forged or altered by someone other than you or a family member without your or a family member's knowledge or consent, or which purports to have been issued by you or a family member but was in fact fraudulently issued without your or a family member's knowledge or consent; or

  c. Any other intentional perversion of truth by someone other than you or a family member perpetrated in order to induce you or a family member to part with something of value.

**Fraud Safeguard event** means fraud, embezzlement, or forgery, ATM robbery, or stolen identity event as set forth in this endorsement.

**Money** means:

  a. Currency, coins and bank notes in current use and having a face value; and

  b. Travelers checks, register checks and money orders.

Other property means and is limited to jewelry, precious metals, antiques, fine art, ceramics, furs, collectibles, and gemstones.

Restoration Services means those services performed in response to a stolen identity event, and on your or a family member's, behalf after receipt of authorization from you or a family member, including but not limited to:

1. Providing you or a family member with a package of information which includes a description of the resolution process, educational articles, and guidance for avoiding future complications.

2. Notifying the three major credit bureaus and providing assistance with requesting that a fraud alert be placed on your or a family member's credit files and affected credit accounts.

3. Reviewing your or a family member's credit files with you or a family member to determine the accuracy of the file and potential areas of fraud.

4. Notifying as needed, your or a family member's affected creditors, financial institutions, credit card companies, utility providers, and merchants of the identity fraud.

5. Providing information to the Federal Trade Commission (FTC), and to other government agencies as appropriate.

6. When appropriate, providing assistance with obtaining and reviewing your Social Security Personal Earnings and Benefits Statement.

7. Creating and maintaining a case file to document the identity fraud.

8. When appropriate, providing other assistance we might reasonably be able to offer you or a family member on a case by case basis, as determined in our sole and absolute discretion.

   We reserve the right to refuse or terminate the provision of restoration services where you or a family member are deemed to be committing fraud or other illegal acts, making untrue statements, or failing to perform your or the family member's portion of the recovery plan.

Robbery means the unlawful taking of property from the care and custody of a person, accomplished by means of force or fear.

Securities mean negotiable and non-negotiable instruments or contracts representing either money or property.

Stolen identity event means the illegal use of your or a family member's name, social security number, or other method of identity without permission.

It is agreed and understood that PART III - LIABILITY has been amended to include the following:

## FRAUD SAFEGUARD

Insuring Agreements

A. Fraud, Embezzlement or Forgery

   We will pay you or a family member for loss of money, securities, or other property up to the applicable Limits of Insurance shown in the schedule, resulting directly from fraud, embezzlement, or forgery perpetrated against you or a family member during the Policy Period. The loss must be discovered not later than ninety (90) days from the end of the Policy Period.

B. ATM Robbery

   We will pay you or a family member, up to the applicable Limits of Insurance shown in the schedule, for loss of money resulting directly from a robbery that occurs within 100 feet from an Automatic Teller Machine (ATM), immediately after withdrawing such monies from the same ATM. This coverage does not apply to any other loss of money or valuables in your or a family member's possession resulting from the robbery.

C. Stolen Identity Event

We will pay Costs and Legal Costs, as set forth below in Payment of Loss for a stolen identity event, up to the applicable Limits of Insurance shown in the schedule, including a stolen identity event occurring on or arising out of the use of the Internet. The stolen identity event must occur and be discovered during the Policy Period.

1. Payment of Loss For A Stolen Identity Event

   a. Costs

      1. Costs incurred by you or a family member for re-filing applications for loans, grants, other credit or debt instruments that are rejected solely because the lender received from any source incorrect information as a result of a stolen identity event;

      2. Costs for notarizing affidavits or other similar documents, long distance telephone calls, and postage reasonably incurred as a result of your or a family member's efforts to report a stolen identity event or amend or rectify records as to your or a family member's true name or identity as a result of a stolen identity event;

      3. Costs incurred by you or a family member for a maximum of six (6) credit reports from an entity approved by us. The first credit report may not be requested until after the discovery of a stolen identity event;

      4. Costs for contesting the accuracy or completeness of any information contained in a credit report following a stolen identity event;

      5. Actual lost wages not to exceed $10,000 that would have been earned in the United States, whether partial or whole days, for time reasonably and necessarily taken off work and away from your or a family member's work premises solely as a result of your or a family member's efforts to amend or rectify records as to your or a family member's true name or identity as a result of a stolen identity event. Actual lost wages includes remuneration for vacation days, discretionary days, floating holidays, and paid personal days but not for sick days or any cost arising from time taken from self-employment. Coverage is limited to wages lost within twelve (12) months after your or a family member's discovery of a stolen identity event and is limited also to the applicable Aggregate Limits of Insurance shown in the schedule.

   b. Legal Costs

      Costs for reasonable fees for an attorney appointed by us and related court fees, incurred by you or a family member with our consent, for:

      1. Any legal action brought against you or a family member by a creditor or collection agency or entity acting on behalf of a creditor for non-payment of goods or services or, default on a loan as a result of a stolen identity event;

      2. Removing any civil judgment wrongfully entered against you or a family member as a result of a stolen identity event; and

      3. Criminal defense for charges brought against you or a family member as a result of a stolen identity event.

2. Additional Coverage - Stolen Identity Event

   Restoration Services

   We will provide you or a family member with restoration services after a stolen identity event. The stolen identity event must occur during the Policy Period. Restoration services expenses do not reduce the amount of limit available under Payment of a Loss for a stolen identity event.

Special Limits of Insurance

      1. We will only pay the amount of loss in excess of any applicable Deductible, up to the applicable Limit of Insurance shown in the schedule for that coverage.



2. The most we will pay each insured for all loss resulting from fraud, embezzlement, or forgery is the Fraud, Embezzlement, or Forgery Each Insured Aggregate Limit shown in the schedule.

3. The most we will pay each insured for all loss resulting from a stolen identity event is the Stolen Identity Each Insured Aggregate Limit shown in the schedule.

4. The most we will pay each insured for all loss resulting from an ATM Robbery is the ATM Robbery Each Insured Aggregate Limit shown in the schedule.

5. All loss arising from continuous, repeated, or related fraud safeguard events will be treated as one fraud safeguard event.

6. The most we will pay for any loss is the applicable Limit of Insurance. If, however, a loss:

   a) Exceeds the applicable Limit of Insurance; and

   b) There is more than one insured person claiming a loss and

   c) The combined loss is greater than the Limit of Insurance for any one insured person; and

   d) The affected insured persons can reasonably demonstrate joint ownership of the money, securities, or other property;

   we will pay each insured person up to the applicable Limit of Insurance for money, securities, or other property, until the loss is satisfied, but under no circumstance will we pay:

   1) more than the adjusted value of the money, securities, or other property; or

   2) each insured person for the same money, securities or other property, or portion thereof.

7. We will not pay for loss for any occurrence of fraud, embezzlement, or forgery until the amount of loss exceeds the Fraud, Embezzlement, or Forgery Deductible shown in the schedule. A separate Fraud, Embezzlement, or Forgery Deductible will apply to each insured.

It is agreed and understood that **PART III - LIABILITY**, Exclusions, has been amended to include the following:

As respects FRAUD SAFEGUARD coverage provided by this endorsement:

This insurance does not provide coverage for liability, defense costs or any other cost or expense for:

1. Intentional Loss

   We do not cover any loss for any act committed at your or a family member's direction or with your or a family member's knowledge.

2. Dishonest Acts

   We do not cover any loss arising out of any dishonest or criminal act by you or a family member.

3. Confiscation

   We do not cover any loss caused by the confiscation, destruction, or seizure of property by any government or public entity or their authorized representative.

4. Computer Error

   We do not cover any loss resulting from an error in computer programming or error in instructions to a computer.

5. Business Or Professional Services

   We do not cover any loss arising out of a business or professional service engaged in by you or a family member.

6.  Property Damage, Bodily Injury, or Personal Injury.

We do not cover any bodily injury, property damage, or personal injury.

7.  Financial Guarantees

We do not cover any guarantee of the financial performance of any financial instrument or investment vehicle.

8.  Indirect Loss

We do not cover any loss that is an indirect result of any fraud guard event including but not limited to:

   a)  Your or a family member's inability to realize income that you would have realized had there been no loss or damage to money, securities, or other property;

   b)  Payment of damages of any type for which you or a family member are legally liable; or

   c)  Payment of costs, fees or other expenses you or a family member incur in establishing either the existence or the amount of loss under this endorsement other than those set forth under this endorsement.

9.  Legal Expenses

Expenses related to any legal action, except as set forth in this endorsement related to a stolen identity event.

10.  Games of Chance

Any loss resulting from any game of chance.

11.  Forgeries

Any forgery that is electronic, digital, or mechanical.

12.  Service Disputes

Any loss arising out of any dispute or disagreement concerning the quality of goods or services unless the loss arises out of fraud, embezzlement or forgery.

13.  Not-for-Profit Organizations

Any loss arising out of the giving of any contribution, donation, restricted gift, or payment of any kind to any not-for-profit organization.

14.  Investment Loss Due to Corporate Fraud

We do not cover any loss due to the change in value of securities issued by a business where loss results directly or indirectly from or alleges or involves in any manner whatsoever, fraud, embezzlement or forgery by the business including but not limited to its Directors or Officers, which issued the securities.

It is agreed and understood that PART IV - CONDITIONS has been amended to include the following:

A.  Your or a Family Member's Duties After a Fraud Safeguard Event

In the event of a Fraud Safeguard Event or loss you or a family member must:

   1.  Notify the police if a law may have been broken;

   2.  Provide us with a police report or a report that was submitted to the appropriate civil authorities;

   3.  Give us prompt notice of the loss;

   4.  Take action to avoid future loss, including securing any residence, safeguarding your or a family member's assets and ending your or a family member's business relationship with any one responsible for a Fraud Safeguard Event;

5. As soon as possible, give us a description of how, when, and where the loss occurred and a description of the loss, including a description of money, securities, and other property;

6. If requested, permit us to question you and family members under oath at such times as may be reasonably required, about any matter relating to this insurance or your or a family member's claim, including inspection of your or a family member's books and records. In such event, your or a family member's statement containing your or a family member's answers will be signed;

7. Send us a signed, sworn proof of loss or affidavit containing the information we request to investigate the claim. You or a family member will do this within thirty (30) days after our request. We will supply you or a family member with the necessary forms;

8. In the event of a credit card loss, in addition to all of the above, you or a family member will notify the credit card service company or the issuing bank immediately, but in no event no later than two (2) business days after discovery;

9. Upon discovery of an event of a loss involving an electronic fund transfer, in addition to all of the above, you or a family member will notify the service providers and financial institutions involved in the transfer immediately, but in no event no later than two (2) business days after discovery;

10. You or a family member must cooperate with us in investigating, evaluating and settling a claim and help us:

    a) Enforce any legal rights you, a family member or we may have against anyone who may be liable to you or a family member;

    b) Attend depositions, hearings and trials; and

    c) Secure and give evidence, and obtain the attendance of witnesses; and

11. We reserve the right to request any other reasonable document or action of you or a family member.

B. Valuation

1. Securities

In the event of a loss of securities, we may elect to pay you or a family member the cost of replacing such securities, determined by the market value at the time of such settlement. We will not be liable for more than the actual cash value of the securities at the close of business on the business day preceding the day on which the loss was discovered. If our payment is not sufficient to indemnify you or a family member in full for the loss of securities, our liability is limited to the replacement of or the payment for such securities whichever is less, but in no event will the payment be more than the applicable Limit of Insurance.

2. Foreign Currency

In the event of a loss of foreign currency, we will be liable for the United States dollar equivalent at the exchange rate published in the Wall Street Journal on the day of the discovery of the loss.

3. Other Property

In event of loss of other property, we will not be liable for more than the actual cash value of the other property on the date of the discovery of the loss, or for more than the actual cost of repairing or of replacing such property with property or material of like quality and value.

# HURRICANE PROTECTIVE DEVICES

With respect to coverage provided by this endorsement, all provisions and conditions of the policy apply unless they are changed by this endorsement.

As respects the following location

7230 Lemon Grass Drive                    Parkland, FL 33076

It is agreed and understood that for a premium credit, Part IV. CONDITIONS is amended to include the following:

Hurricane Protective Devices

You have indicated to us that your residence is equipped with hurricane protective devices. We acknowledge the necessity and benefit of storm shutters, plywood and other attachable coverings reported by you and used for protective purposes.

You agree to:
1. Maintain each storm shutter or other storm protective device in working order on all exterior glass and skylights of your residence ;
2. Close and secure all storm shutters or other storm protective devices beginning at the issuance of a hurricane watch or warning by the National Hurricane Center covering the area where your residence is located and remain secure until the National Hurricane Center discontinues the hurricane watch or warning;
3. Inform us promptly of the alteration, disablement, replacement, or removal of, or significant damage to, any storm shutter or other storm protective device; and
4. Inform us promptly of any alterations or additions to existing property owned by you or the construction of any new property owned by you at your residence .

If the storm shutters, plywood and other attachable coverings which were represented to us as being utilized for protective purposes are not maintained or applied properly, as stated above, in preparation for a hurricane loss, we reserve the right to discontinue the benefit of this endorsement, including any related premium credit or premium reduction.

Includes copyrighted materials from Insurance Services Office, Inc. with its permission.

PCHO-HPD (06/05)

## INCREASED ENSUING FUNGI OR BACTERIA COVERAGE

With respect to coverage provided by this endorsement, all provisions and conditions of the policy apply unless they are changed by this endorsement.

As respects the following location(s):

> 7230 Lemon Grass Drive
> Parkland, FL 33076

It is agreed and understood that:

**PART II - PROPERTY C. Additional Coverages** Ensuing **Fungi** or Bacteria, is deleted and replaced with the following:

Ensuing **Fungi** or Bacteria

We will pay up to    $50,000    in total for loss to your **house, contents and other permanent structures** caused by **fungi** or bacteria resulting from a covered loss, including:

1. The cost to remove, clean-up, remediate, contain, treat, detoxify, neutralize, **fungi** or bacteria;

2. The cost to tear out and replace any part of the building or other covered *property as needed to gain access to the fungi or bacteria;*

3. The cost of testing or monitoring of air or property to confirm the absence, presence or level of **fungi** or bacteria whether performed prior to, during or after removal, repair, restoration or replacement.  The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of **fungi** or bacteria; and

4. Up to $5,000 for the reasonable increase in living expenses incurred by you to maintain your household's usual standard of living if your **residence** is un-inhabitable.  Payment will continue for the shortest period of time necessary to restore your **residence** to a habitable condition.

This is the most we will pay regardless of the number of occurrences, the number of locations insured, or the number of claims made.  We will not make any additional payments for ensuing fungi or bacteria under any other Additional Coverage.

These payments do not increase the amount of coverage.

PCHO-IEF (12/05)



## Checklist of Coverage

**Policy Type :** _____
(Homeowner's, Condominium/Coop Unit Owner's or Tenant's)

The following checklist is for informational purposes only. Florida law prohibits this checklist from changing any of the provisions of the insurance contract which is the subject of this checklist. Any endorsement regarding changes in types of coverage, exclusions, limitations, reductions, deductibles, coinsurance, renewal provisions, cancellation provisions, surcharges, or credits will be sent separately.

Reviewing this checklist together with your policy can help you gain a better understanding of your policy's actual coverages and limitations, and may even generate questions. By addressing any questions now, you will be more prepared later in the event of a claim. Experience has shown that many questions tend to arise regarding the coverage of attached or detached screened pool enclosures, screened porches, and other types of enclosures. Likewise, if your policy insures a condominium unit, questions may arise regarding the coverage of certain items, such as individual heating and air conditioning units; individual water heaters; floor, wall, and ceiling coverings; built-in cabinets and counter tops; appliances; window treatments and hardware; and electrical fixtures. A clear understanding of your policy's coverages and limitations will reduce confusion that may arise during claims settlement.

Please refer to the policy for details and any exceptions to the coverages listed in this checklist. All coverages are subject to the provisions and conditions of the policy and any endorsements. If you have questions regarding your policy, please contact your agent or company. Consumer assistance is available from the Department of Financial Services, Division of Consumer Services' Helpline at (800) 342-2762 or www.fldfs.com.

This form was adopted by the Florida Financial Services Commission.

| Dwelling Structure Coverage (Place of Residence) | |
|---|---|
| Limit of Insurance: See Declarations Page | Loss Settlement Basis: Replacement Cost (i.e.: Replacement Cost, Actual Cash Value, Stated Value, etc.) |
| **Other Structures Coverage (Detached from Dwelling)** | |
| Limit of Insurance: See Declarations Page | Loss Settlement Basis: Replacement Cost (i.e.: Replacement Cost, Actual Cash Value, Stated Value, etc.) |
| **Personal Property Coverage** | |
| Limit of Insurance: See Declarations Page | Loss Settlement Basis: Replacement Cost (i.e.: Replacement Cost, Actual Cash Value, Stated Value, etc.) |
| **Deductibles** | |
| Annual Hurricane: See Declarations Page | All Perils (Other Than Hurricane): See Declarations Page |



## Checklist of Coverage (continued)

The above Limit of Insurance, Deductibles, and Loss Settlement Basis apply to the following perils insured against:
(Items below marked **Y** (Yes) indicate coverage IS included, those marked **N** (No) indicate coverage is NOT included)

| | |
|---|---|
| Y | Fire or Lightning |
| | Hurricane |
| N | Flood (Including storm surge) |
| Y | Windstorm or Hail (other than hurricane) unless excluded via PCHO-WHC Wind or Hail Exclusion Endorsement |
| Y | Explosion |
| Y | Riot or Civil Commotion |
| N | Aircraft |
| N | Vehicles |
| Y | Smoke |
| Y | Vandalism or Malicious Mischief |
| Y | Theft |
| Y | Falling Objects |
| N | Weight of Ice, Snow or Sleet |
| Y | Accidental Discharge or Overflow of Water or Steam |
| N | Sudden and Accidental Tearing Apart, Cracking, Burning or Bulging |
| Y | Freezing |
| Y | Sudden and Accidental Damage from Artificially Generated Electrical Current |
| N | Volcanic Eruption |
| | Sinkhole |
| Y | Any Other Peril Not Specifically Excluded (dwelling and other structures only) |

Special limits and loss settlement exceptions may apply to certain items. Refer to your policy for details.

| Loss of Use Coverage | | |
|---|---|---|
| Coverage | Limit of Insurance | Time Limit |
| (Items below marked **Y** (Yes) indicate coverage IS included, those marked **N** (No) indicate coverage is NOT included) | | |
| Y Additional Living Expense | 30% of Dwelling | None |
| Y Fair Rental Value | 30% of Dwelling | None |
| Y Civil Authority Prohibits Use | 30% of Dwelling | 30 Days |

| Property - Additional/Other Coverages | | | |
|---|---|---|---|
| (Items below marked **Y** (Yes) indicate coverage IS included, those maked **N** (No) indicate coverage is not included) | Limit of Insurance | Amount of insurance is an additional amount of coverage or is included within the policy limit. | |
| | | Included | Additional |
| Y Debris Removal | 30% | Y | |
| Y Reasonable Repairs | None | Y | |
| Y Property Removed | None | Y | |
| Y Credit Card, Electronic Fund Transfer Card, or Access Device, Forgery and Counterfeit Money | $10,000 | Y | |
| Y Loss Assessment | $50,000 | Y | |
| Y Collapse | | Y | |
| Y Glass or Safety Glazing Material | | Y | |
| N Landlord's Furnishings | | N | |
| Y Law and Ordinance | 30% | Y | |
| Y Grave Markers | $5,000 | Y | |
| Y Mold / Fungi | $10,000 | Y | |

Checklist of Coverage (continued)

| Discounts | |
|---|---|
| (Items below marked Y (Yes) indicate discount IS applied, those marked N (No) indicate discount is NOT applied) | Dollar (\$) Amount of Discount |
| Y Multiple Policy | |
| Y Fire Alarm/ Smoke Alarm/ Burglar Alarm | |
| Y Sprinkler | |
| Y Windstorm Loss Reduction | |
| Y Building Code Effectiveness Grading Schedule | |
| Other | |

| Insurer May Insert Any Other Property Coverage Below | | |
|---|---|---|
| (Items below marked Y (Yes) indicate Coverage IS included, those marked N (No) indicate coverage is NOT Included) | Limit of Insurance | Loss Settlement Basis (i.e. Replacement Cost, Actual Cash Value, Stated Value, etc.) |
| | | |
| | | |
| | | |

| Personal Liability Coverage |
|---|
| Limit of Insurance: \$_____ |

| Medical Payments to Others Coverage |
|---|
| Limit of Insurance: \$10,000 |

| Liability - Additional/Other Coverages | | | |
|---|---|---|---|
| (Items below marked Y (Yes) indicate Coverage IS included, those marked N (No) indicate coverage is NOT Included) | Limit of Insurance | Amount of insurance is an additional amount of coverage or is included within the policy limit. | |
| | | Included | Additional |
| Y Claim Expenses | | Y | |
| Y First Aid Expenses | | Y | |
| Y Damage to Property of Others | \$1,000 | Y | |
| Y Loss Assessment | \$50,000 | Y | |

| Insurer May Insert Any Other Liability Coverage Below | |
|---|---|
| (Items below marked Y (Yes) indicate coverage IS included, those marked N (No) indicate coverage is NOT included) | Limit of Insurance |
| | |
| | |
| | |
| | |

## HURRICANE DEDUCTIBLE

With respect to coverage provided by this endorsement, all provisions and conditions of the policy apply unless they are changed by this endorsement.

As respects the following location

7230 Lemon Grass Drive                    Parkland, FL 33076

For the credit given, it is agreed and understood that **Part II. B. Payment of a Loss** , Item 3. Deductible is amended to include the following:

We will pay only that part of the total of hurricane loss to your **house, contents, and other permanent structures** including additional coverages that exceed the hurricane deductible stated on your Declarations Page.  This deductible applies in the  event of direct physical loss to property covered under this policy caused directly or indirectly by hurricane.   Such deductible applies regardless of any other cause or event contributing concurrently or in any sequence to the loss. No other deductible provision in the policy applies to direct physical loss caused by hurricane.

"Hurricane" means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service which:

a.   Begins at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;

b.   Continues for the period of time during which the hurricane conditions exist anywhere in Florida; and

c.   Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

The hurricane deductible will be applied on an annual basis to all hurricane losses that occur during the calendar year in any one of the policies issued by us  or an AIG member company for the same insured location.

For second and subsequent covered hurricane losses occurring in the same calendar year, the dollar amount of the hurricane deductible will be reduced by all deductible amounts applied toward prior covered losses during the same calendar year for the same insured location.  The greater of the remaining hurricane deductible or the all other peril deductible will apply. The all other peril deductible will not be waived for a covered loss greater than $50,000.

If you have covered hurricane losses for this location in a calendar year under more than one policy issued by us or an AIG  member company, your hurricane deductible will be equal to the greatest dollar amount of any hurricane deductible in any one of the policies for this location.

You are required to report hurricane losses that are below the hurricane deductible in order to apply such hurricane losses to subsequent hurricane claims.

Includes copyrighted materials from Insurance Services Office, Inc. with its permission.

PCHO-FLHD (06/05)                                                                                      1

In the event there is a hurricane loss (or losses) during a calendar year and a lower hurricane deductible is then purchased under the new or renewal policy in the same calendar year, the lower hurricane deductible will not apply until January 1 of the following calendar year.

Includes copyrighted materials from Insurance Services Office, Inc. with its permission.

PCHO-FLHD (06/05)                                                                                        2

# Notice of Premium Discounts for Hurricane Loss Mitigation

## *** Important Information ***
## About Your Homeowners Insurance Policy

Dear Homeowner,

Two unprecedented back-to-back hurricane seasons - with eight hurricanes and four tropical storms - have caused tens of billions of dollars in insured damages. Predictions of more catastrophic hurricanes making landfall in the U.S. have triggered significant increases in insurance premiums to cover potential future losses. Enclosed is information regarding wind loss mitigation that will make your home more resistant to wind and help protect your family during a catastrophic event. In addition to reducing your hurricane-wind premium by installing mitigation features, you may also reduce the likelihood of out of pocket expenses, such as your hurricane deductible, you may otherwise incur after a catastrophic event.

Sincerely,

AIG Private Client Group

**What factors are considered in establishing my premium?**

<u>Your location</u>: The closer you are to the coast, the more vulnerable you are to damage caused by hurricane winds and this makes your hurricane-wind premium higher than similar homes in other areas of the state.

<u>Your policy</u>: Your insurance policy is divided into two premiums: one for damage caused by hurricane force winds (hurricane-wind) and one for all other damage (all perils), such as fire.

<u>Your deductible</u>: Under the law, you are allowed to choose a $500, 2%, 5% or 10% deductible depending on the actual value of your home. The larger your deductible, the lower your hurricane-wind premium, however, if you select a higher deductible your out-of-pocket expenses in the event of a hurricane claim will be higher.

<u>Improvements to your home</u>: The state requires insurance companies to offer discounts for protecting your home against damage caused by hurricane winds. Securing your roof so it doesn't blow off and protecting your windows from flying debris are the two most cost effective measures you can take to safeguard your home and reduce your hurricane-wind premium. Discounts apply only to the hurricane-wind portion of your policy.

<u>Your maximum discount</u>: Discounts are not calculated cumulatively. The total discount is not the sum of the individual discounts. Instead, when one discount is applied, other discounts are reduced until you reach your maximum discount of XX%.

**How can I take advantage of the discounts?**

Most homeowners will need a licensed or certified professional (general, residential or building contractor, building inspector, a registered architect, engineer or certified building code official) to inspect the home to identify potential mitigation measures and legally verify improvements. There may be other inspection professionals available, for a listing of Individuals and/or Inspection Companies meeting these qualifications contact your Insurance Agent.

Eligible homeowners can also apply for a free inspection through the new My Safe Florida Home Program by visiting www.mysafefloridahome.com or calling toll-free 1-866-513-6734. To be eligible, Floridians must live in single-family, site-built homes.

**How much do these improvements cost?**

The costs of the improvement projects vary.  Homeowners should contact a licensed contractor for an estimate.  You can find a Certified Business Contractor in your area by visiting the Florida Department of Business and Professional Regulation online at www.myfloridalicense.com.

Homeowners may be eligible for a matching grant up to $5,000 through the My Safe Florida Home Program if they live at least 6 months out of the year in a single-family detached, site-built home that meets the following criteria:

> was built before March 1, 2002;
> has an insured value of $300,000 or less;
> has a valid homestead exemption;
> is located in the wind-borne debris region; and
> has undergone a wind inspection.

Grant funds must be used for opening protections, which includes windows, skylights, gable vents, doors and garage doors, and the bracing of gable ends.  To be eligible for a grant for opening protection, you must protect all openings identified by your wind inspection report as needing hurricane protection.

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**The following is an example of how much you can reduce your insurance premium if you have mitigating features on your home.  The example is based on your hurricane-wind premium of $<u>6,500</u> which is part of your total annual premium of $<u>10,000</u>.  Remember, the discounts shown only apply to the hurricane-wind portion of the premium and the discounts for the construction techniques and features listed above are not cumulative.**

**Existing Construction Discounts (Homes built prior to 2002)**

| Description of Feature | Wind Only Estimated Premium Discount Percent | Estimated* Annual Premium ($) is Reduced by: |
|---|---|---|
| **Roof Covering (i.e., shingles or tiles)**<br>• Meets the Florida Building Code | Average:    5%<br>Max:         9% | $455<br>$910 |
| • Reinforced Concrete Roof Deck·<br><br>·If this feature is installed on your home you most likely will not qualify for any other discount. | Average:    17%<br>Max:         31% | $1690<br>$3120 |
| **How Your Roof is Attached**<br>• Using a 2" nail spaced at 6" from the edge of the plywood and 12" in the field of the plywood | None | |
| • Using a 2 1/2" nail spaced at 6" from the edge of the plywood and 12" in the field of the plywood | Average:    8%<br>Max:         23% | $845<br>$2275 |
| • Using a 2 1/2" nail spaced at 6" from the edge of the plywood and 6" in the field of the plywood | Average:    8%<br>Max:         28% | $845<br>$2795 |
| **Roof-to-Wall Connection**<br>• Using "Toe Nails" - defined as 3 nails are driven at an angle through the rafter and into the top roof. | None | |
| • Using Clips  - defined as pieces of metal that are  nailed into the side of the rafter/truss and into the  side of the top plate or wall stud | Average:    11%<br>Max:         34% | $1105<br>$3380 |
| • Using Single Wraps - a single strap that is attached to the side and/or bottom of the top  plate and are nailed to the rafter/truss | Average:    13%<br>Max:         36% | $1300<br>$3640 |
| • Using Double Wraps - straps are attached to the  side and/or bottom of the top plate and are nailed to the rafter/truss | Average:    13%<br>Max:         37% | $1300<br>$3705 |
| **Roof Shape**<br>• Hip Roof - defined as your roof sloping down to  meet all your outside walls (like a pyramid). | Average:    9%<br>Max:         31% | $910<br>$3055 |
| • Other | | |

| Description of Feature | Estimated* Premium Discount Percent | | Estimated* Annual Premium ($) is Reduced by: |
|---|---|---|---|
| **Secondary Water Resistance (SWR)** | | | |
| • SWR - defined as a layer of protection between the shingles and the plywood underneath that protects the building if the shingles blow off. | Average:<br>Max: | 3%<br>10% | $260<br>$1040 |
| • No SWR | | | |
| **Shutters** | | | |
| • None | | | |
| • Intermediate Type -shutters that are strong enough to meet half the old Miami-Dade building code standards | Average:<br>Max: | 10%<br>25% | $1040<br>$2470 |
| • Hurricane Protection Type - shutters that are strong enough to meet the current Miami-Dade building code standards | Average:<br>Max: | 13%<br>31% | $1300<br>$3120 |

\* Estimate is based on information currently on file and the actual amount may vary.

New Construction Discounts (Homes built in 2002 or newer)

| Description of Feature | Estimated* Premium Discount Percent | Estimated* Annual Premium ($) is Reduced by: |
|---|---|---|
| In addition to the two credits below, all homes built in 2002 or newer will receive a 68% new home discount on the hurricane-wind portion of your premium. | Minimum:  44% | $44.20 |
| <u>Shutters</u><br><br>• None<br><br>• Intermediate Type -shutters that are strong enough to meet half the old Miami-Dade building code standards<br><br>• Hurricane Protection Type -- shutters that are strong enough to meet the current Miami-Dade building code standards | Average:  3%<br>Max:  5% | $260<br>$520 |
| <u>Roof Shape</u><br><br>• Hip Roof - defined as your roof sloping down to meet all your outside walls (like a pyramid).<br><br>• Other | Average:  3%<br>Max:  7% | $260<br>$650 |

* Estimate is based on information currently on file and the actual amount may vary.

Alternately and regardless of the year of construction if you meet the minimum fixtures and constructions requirements of the Florida Building Code you have the option to reduce your hurricane-wind deductible from _2%_ to _10%_.

If you have further questions about the construction techniques and features or other construction techniques and features that could result in a discount, please contact your agent or the company.



# Uniform Mitigation Verification Inspection Form
## Maintain a copy of this form with insurance policy

Inspection Date: _____

## Owner Information

| | |
|---|---|
| Owner Name: | Contact Person: |
| Address: | Home Phone: |
| City:                          Zip: | Work Phone: |
| County: | Cell Phone: |
| Insurance Company: | Policy #: |
| Year of Home:          # of Stories: | Email: |

1. **Roof Covering:** *Date of Installation:* _____

   ☐ At a minimum meets the 2001 Florida Building Code or the 1994 South Florida Building Code.

   ☐ Does not meet the above minimum requirements.

   ☐ Unknown or Undetermined.

2. **Roof Deck Attachment:**   What is the **weakest** form of roof deck attachment?

   ☐ Plywood/OSB roof sheathing attached to the roof truss/rafter  (spaced a maximum of  24" o.c.) by 6d nails spaced at 6" along the edge and 12" in the field. -OR- Batten decking supporting wood shakes or wood shingles. -OR- Any system of screws, nails, adhesives, other deck fastening system or truss/rafter spacing that has an equivalent mean uplift resistance of 55 psf.

   ☐ Plywood/OSB roof sheathing with a minimum thickness of  ½" attached to the roof  truss/rafter (spaced a maximum of 24" o.c.) by 8d nails spaced 6" along the edge and 12" in the field .-OR- Any system of screws, nails, adhesives, other deck fastening system or truss/rafter spacing that has an equivalent mean uplift resistance of 103 psf.

   ☐ Plywood/OSB roof sheathing with a minimum thickness of  ½"  attached to the roof truss/rafter (spaced a maximum of 24" o.c.) by 8d nails spaced 6" along the edge and 6" in the field. -OR- Dimensional lumber/Tongue & Groove decking with a minimum of 2 nails per board. -OR- Any system of screws, nails, adhesives, other deck fastening system or truss/rafter spacing that has an equivalent mean uplift resistance of 182 psf.

   ☐ Reinforced Concrete Roof Deck.

   ☐ Unknown, unidentified or no attic access.

3. **Roof to Wall Attachment:**   What is the **weakest** roof to wall connection?

   | | |
   |---|---|
   | ☐ Toe Nail | Rafter/truss anchored to top plate of wall using nails driven at an angle through the rafter/truss and attached to the top plate of the wall. |
   | ☐ Clips | Metal attachments on **every** rafter/truss that are nailed to one side (or both sides in the case of a diamond type clip) of the rafter/truss and attached to the top plate of the wall frame or embedded in the bond beam. |
   | ☐ Single  Wraps | Metal Straps must be secured to **every** rafter/truss with a minimum of 3 nails. wrapping over and securing to the opposite side of the rafter/truss with a minimum of 1 nail. The Strap must be attached to the top plate of the wall frame or embedded in the bond beam in at least one place. |
   | ☐ Double Wraps | Both Metal Straps must be secured to **every** rafter/truss with a minimum of 3 nails, wrapping over and securing to the opposite side of the rafter/truss with a minimum of 1 nail. Each Strap must be attached to the top plate of the wall frame or embedded in the bond beam in at least one place. |

   ☐ Structural        Anchor bolts, structurally connected or reinforced concrete roof.

   ☐ Unknown        Unknown, unidentified or no attic access.

4. <u>Roof Geometry:</u>   What is the roof shape(s)?  (Porches or carports that are not structurally connected to the main roof system are not considered in the roof geometry determination)

   ☐ Hip Roof        Hip roof with no other roof shapes greater than 50% of any major wall length.

   ☐ Other        Any other roof shape or combination of roof shapes including hip, gable, flat, gambrel, mansard and other roof shapes.

5. <u>Gable End Bracing:</u>  For roof structures that contain gables, please check the <u>weakest</u> that apply:

   ☐ Gable End(s) are NOT braced.

   ☐ Gable End(s) are braced at a minimum in accordance with the 2001 Florida Building Code.

   ☐ Not applicable, unknown or unidentified.

6. <u>Wall Construction Type:</u>  Check all wall construction types for exterior walls of the structure and percentages for each:

| | | | | |
|---|---|---|---|---|
| ☐ Wood Frame | _____ % | | ☐ Un-Reinforced Masonry | _____ % |
| ☐ Reinforced Masonry | _____ % | | ☐ Poured Concrete | _____ % |
| ☐ Other: _____ | _____ % | | | |

7. <u>Secondary Water Resistance</u> (SWR): (standard underlayments or hot mopped felts are not SWR)

   ☐ SWR        Self adhering polymer modified bitumen roofing underlayment *applied directly to the sheathing* or foam SWR Barrier (not foamed on insulation) applied as a secondary means to protect the dwelling from water intrusion.

   ☐ No SWR

8. <u>Opening Protection:</u>  What is the <u>weakest</u> form of wind borne debris protection installed on the structure? (<u>Exterior openings</u> include, but are not limited to: windows, doors, garage doors, skylights, etc.  Product approval may be required for opening protection devices without proper rating identification)

   ☐ Hurricane        <u>All exterior openings</u> are fully protected at a minimum with impact resistant coverings, impact resistant doors and/or impact resistant glazing that meets the requirements of one of the following for "Large Missile Impact:

            Miami-Dade County PA 201, 202 and  203

            Florida Building Code TAS 201, 202 and 203

            ASTM E 1886 and  ASTM E 1996 (Missile Level C - 9 lb)

   ☐ Basic        <u>All exterior openings</u> are fully protected at a minimum with impact resistant coverings, impact resistant doors and/or impact resistant glazing that meets the requirements for "Small Missile Impact".

   ☐ Not Rated        <u>Only glazed openings</u> are covered with; impact resistant coverings/products -OR— shutter protection devices manufactured before 1994 that cannot be identified as Miami-Dade or FBC product approved. This rating also applies to wood structural panels that do not meet the requirements of Section 1609 and Table 1609.1.4 of the 2004 FBC (2006 supplement).

   ☐ Wood Panels        Plywood/OSB meeting the requirements of Section 1609 and Table 1609.1.4 of the 2004 FBC (2006 supplement).

   ☐ None        One or more exterior openings are not covered with wind borne debris protection.  This rating also applies to after-market window films.

## SWORN STATEMENT IN PROOF OF LOSS

$4,377,471.00
AMOUNT OF POLICY AT TIME OF LOSS

AIG PCG 0001968407
POLICY NUMBER

04/30/07
DATE ISSUED

04/30/2010
DATE EXPIRES

LSG Insurance Partners
AGENT

To the American Home Assurance Company through the Private Client Group of AIG, Inc., of _____

At the time of loss, by the above indicated policy of insurance you insured Wesley D. Hutchings ("Mr. Hutchings") and Barbara J. Hutchings, as Trustee of the Hutchings Family Trust ("the Trust") against loss by ensuing loss separate and resulting from faulty, inadequate, or defective design, workmanship, construction, and materials used in construction to the property described under Schedule "A", according to the terms and conditions of the said policy and all forms, endorsements, transfers, and assignments attached thereto.

1.    **Time and Origin:**  A separate ensuing loss occurred about the hour of N/A o'clock N/A M on the 7th day of April 2009. The cause and origin of the said loss were: See Exhibit "A."

2.    **Occupancy:**  The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatsoever: Private residence.

3.    **Title and Interest:**  At the time of the loss the interest of your insured in the property described herein was owner (the Trust) and settlor of and holding a life estate in the Trust (Mr. Hutchings). No other person or persons had any interest therein or encumbrance thereon, except: N/A.

4.    **Changes:**   Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location, or exposure of the property described, except: Mr. Hutchings vacated the home on or about 5/10/09, because he was suffering the separate ensuing loss of small airway disease in his lungs resulting from the Chinese Drywall.

5.    **Total Insurance:**   The total amount of insurance upon the property described by this policy was, at the time of the loss, $4,377,471.00 as more particularly specified in the apportionment attached under Schedule "C", besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

6.    **The Actual Cash Value** of said property at the time of the loss was $1,651,429.00 before the loss and $250,000, which represents the value of the raw land, after the loss



EXHIBIT " B "

7.   **The Whole Loss and Damage was $1,604,003.65**

8.   **Less Amount of Deductible $2,500.00**

9.   **The Amount Claimed** under the above numbered policy is **$1,601,503.65 (which is subject to adjustment if more separate ensuing losses are incurred or as more information becomes available)**

The said loss did not originate by any act, design, or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

The furnishings of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights.

**SIGNATURE:** _Wesley D. Hutchings_

**NOTARY:** State of <u>Florida</u>; County of _BROWARD_ ; SS

On this ___19th___ day of August, 2009, before me appeared _Wesley_

_D. Hutchings_ _____

who is known to be the person(s) named herein and who voluntarily executed this release.

_Ligia Tavarez_                    _Dec. 09, 2012_

(Notary) Signature                    Date Commission Expires

NOTARY PUBLIC-STATE OF FLORIDA
Ligia Tavarez
Commission # DD833792
Expires:  DEC. 09, 2012
BONDED THRU ATLANTIC BONDING CO, INC.

SIGNATURE: *Barbara J Hutchings*

**NOTARY:** State of <u>Florida</u>; County of *BROWARD* ; SS

On this *19th* day of August, 2009, before me appeared *BARBARA J. Hutchings*

who is known to be the person(s) named herein and who voluntarily executed this release.

_____          *Dec. 09, 2012*
Notary Signature                          Date Commission Expires

NOTARY PUBLIC-STATE OF FLORIDA
Ligia Tavarez
Commission # DD833792
Expires: DEC. 09, 2012
BONDED THRU ATLANTIC BONDING CO., INC.

## SCHEDULE "A" POLICY FORM

Policy Form Nbr: AIG PCB 0001968407        Dated: April 30, 2009

Item 1. $ 1,464,118       on House
Item 2. $ 292,824       on Other Permanent Structures
Item 3. $ 732,059       on Contents
Item 4. $ 439,235       on Loss of Use
Item 5. $ 1,000,000       on Liability
Item 6. $ 10,000       on Medical Payments
Item 7. $ 439,235       on Rebuilding to Code
Situated at 7290 Lemon Grass Drive, Parkland, FL 33076
Coinsurance, Average, distribution or deductible Clauses, if any $2,500.00
Loss, if any, payable to Wesley D. Hutchings and The Hutchings Family Trust

## SCHEDULE "B"
## STATEMENT OF ACTUAL CASH VALUE AND LOSS AND DAMAGE

| QUANTITY | ITEM | ACTUAL CASH VALUE | LOSS AND DAMAGE |
|---|---|---|---|
| | Reconstruction of Home (as detailed in Exhibit "B") | | $1,493,162.19 |
| | Repairs Already Done to Existing Home (as detailed in Exhibit "C") | | $20,741.99 |
| | Lease for New Home (12 months at $4,850 per month as set forth in Attachment "D") | | $58,200.00 |
| | Attorneys' Fees and Costs to Date | | $28,749.47 |
| | Expert Fees to Date | | $3,150.00 |
| | | | |
| | | | |
| | | | |
| TOTALS | | | $1,604,003.65 (which is subject to adjustment if more separate ensuing losses are incurred or as more information becomes available) |

## SCHEDULE "C" – APPORTIONMENT

| POLICY NBR | EXPIRES | NAME OF COMPANY | ITEM NBR_____ Insures   Pays | | ITEM NBR_____ Insures   Pays | |
|---|---|---|---|---|---|---|
| AIG PCG 0001968407 | April 10, 2010 | American Home Assurance Company | All Items Set Forth in Schedule "A" | All Items Set Forth in Schedule "B" | | |
| | | | | | | |
| | | | | | | |
| **TOTALS** | | | | | | |

Debra Osborne, Adjuster

### RECEIPT FOR PAYMENT

Received _____
Dollars ($_____) from _____
_____(insurer) in full satisfaction
and indemnity for all claims and demands upon said company on account of said loss
and damage and the said policy is hereby _____ (State whether
**Reduced, Reduced and Reinstated** or **Canceled** by payment).


_____          _____
Date                                Signature of the Insured


_____          _____
Date                                Signature of the Mortgagee

## SWORN STATEMENT IN PROOF OF LOSS

$4,377,471.00
AMOUNT OF POLICY AT TIME OF LOSS

AIG PCG 0001968407
POLICY NUMBER

04/30/07
DATE ISSUED

04/30/2010
DATE EXPIRES

LSG Insurance Partners
AGENT

To the American Home Assurance Company through the Private Client Group of AIG, Inc., of _____
At the time of loss, by the above indicated policy of insurance you insured Wesley D. Hutchings ("Mr. Hutchings") and Barbara J. Hutchings, as Trustee of the Hutchings Family Trust ("the Trust") against loss by ensuing loss separate and resulting from faulty, inadequate, or defective design, workmanship, construction, and materials used in construction to the property described under Schedule "A", according to the terms and conditions of the said policy and all forms, endorsements, transfers, and assignments attached thereto.

1.     **Time and Origin:**  A separate ensuing loss occurred about the hour of N/A o'clock N/A M on the 7th day of April 2009. The cause and origin of the said loss were: See Exhibit "A."

2.     **Occupancy:**  The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatsoever: Private residence.

3.     **Title and Interest:**  At the time of the loss the interest of your insured in the property described herein was owner (the Trust) and settlor of and holding a life estate in the Trust (Mr. Hutchings). No other person or persons had any interest therein or encumbrance thereon, except: N/A.

4.     **Changes:**  Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location, or exposure of the property described, except: Mr. Hutchings vacated the home on or about 5/10/09, because he was suffering the separate ensuing loss of small airway disease in his lungs resulting from the Chinese Drywall.

5.     **Total Insurance:**   The total amount of insurance upon the property described by this policy was, at the time of the loss, $4,377,471.00 as more particularly specified in the apportionment attached under Schedule "C", besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

6.     **The Actual Cash Value** of said property at the time of the loss was $1,651,429.00 before the loss and $250,000, which represents the value of the raw land, after the loss


EXHIBIT " B "

7.  **The Whole Loss and Damage** was **$1,604,003.65**

8.  **Less Amount of Deductible $2,500.00**

9.  **The Amount Claimed** under the above numbered policy is **$1,601,503.65**
**(which is subject to adjustment if more separate ensuing losses are incurred or**
**as more information becomes available)**

The said loss did not originate by any act, design, or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

The furnishings of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights.

SIGNATURE: *Wesley D. Hutchings*

NOTARY: State of <u>Florida</u>; County of <u>BROWARD</u>; SS

On this <u>19th</u> day of August, 2009, before me appeared *Wesley D. Hutchings*

who is known to be the person(s) named herein and who voluntarily executed this release.

*Ligia Tavarez*
Notary Signature

*Dec. 09, 2012*
Date Commission Expires

NOTARY PUBLIC-STATE OF FLORIDA
Ligia Tavarez
Commission # DD833792
Expires:   DEC. 09, 2012
BONDED THRU ATLANTIC BONDING CO, INC.

SIGNATURE: _Barbara J Hutchings_

NOTARY: State of <u>Florida</u>; County of _BROWARD_ ; SS

On this _19th_ day of August, 2009, before me appeared _BARBARA J. Hutchings_

who is known to be the person(s) named herein and who voluntarily executed this release.

_Ligia Tavarez_
Notary Signature

_Dec. 09, 2012_
Date Commission Expires

NOTARY PUBLIC-STATE OF FLORIDA
Ligia Tavarez
Commission # DD833792
Expires:  DEC. 09, 2012
BONDED THRU ATLANTIC BONDING CO., INC.

## SCHEDULE "A" POLICY FORM

Policy Form Nbr: AIG PCB 0001968407 _____ Dated: April 30, 2009

Item 1. $ 1,464,118 _____ on House _____

Item 2. $ 292,824 _____ on Other Permanent Structures _____

Item 3. $ 732,059 _____ on Contents _____

Item 4. $ 439,235 _____ on Loss of Use _____

Item 5. $ 1,000,000 _____ on Liability _____

Item 6. $ 10,000 _____ on Medical Payments _____

Item 7. $ 439,235 _____ on Rebuilding to Code _____

Situated at 7290 Lemon Grass Drive, Parkland, FL 33076 _____

Coinsurance, Average, distribution or deductible Clauses, if any $2,500.00 _____

Loss, if any, payable to Wesley D. Hutchings and The Hutchings Family Trust _____

## SCHEDULE "B"
## STATEMENT OF ACTUAL CASH VALUE AND LOSS AND DAMAGE

| QUANTITY | ITEM | ACTUAL CASH VALUE | LOSS AND DAMAGE |
|---|---|---|---|
| | Reconstruction of Home (as detailed in Exhibit "B") | | $1,493,162.19 |
| | Repairs Already Done to Existing Home (as detailed in Exhibit "C") | | $20,741.99 |
| | Lease for New Home (12 months at $4,850 per month as set forth in Attachment "D") | | $58,200.00 |
| | Attorneys' Fees and Costs to Date | | $28,749.47 |
| | Expert Fees to Date | | $3,150.00 |
| | | | |
| | | | |
| | | | |
| TOTALS | | | $1,604,003.65 (which is subject to adjustment if more separate ensuing losses are incurred or as more information becomes available) |

## SCHEDULE "C" – APPORTIONMENT

| POLICY NBR | EXPIRES | NAME OF COMPANY | ITEM NBR_____ Insures      Pays | | ITEM NBR_____ Insures      Pays | |
|---|---|---|---|---|---|---|
| AIG PCG 0001968407 | April 10, 2010 | American Home Assurance Company | All Items Set Forth in Schedule "A" | All Items Set Forth in Schedule "B" | | |
| | | | | | | |
| | | | | | | |
| **TOTALS** | | | | | | |

Debra Osborne, Adjuster

### RECEIPT FOR PAYMENT

Received _____
Dollars ($_____) from _____
_____(insurer) in full satisfaction
and indemnity for all claims and demands upon said company on account of said loss
and damage and the said policy is hereby _____ (State whether
**Reduced, Reduced and Reinstated** or **Canceled** by payment).


_____       _____
Date                                         Signature of the Insured


_____       _____
Date                                         Signature of the Mortgagee

### Exhibit "A"

1.    On April 24, 2007, Barbara J. Hutchings, as Trustee of the Hutchings Real Estate Trust Dated April 9, 2007 ("the Trust"), purchased from WCI Communities, Inc. ("WCI"), residential real property at 7230 Lemon Grass Drive, Parkland, FL ("the Property"). At that time, the Trust accepted a Special Warranty Deed transferring the Property to the Trust. The purchase price was $1,651,439.00.

2.    Wesley D. Hutchings ("Mr. Hutchings"), who holds a life estate in the Property under a Certificate of Trust, began living there in April 2007. He continues to retain full possessory rights to the Property under that Certificate of Trust.

3.    Mr. Hutchings and the Trust shall be collectively sometimes referred to herein as "Claimants."

4.    WCI had developed the Parkland Golf & Country Club where the Property is located.

5.    Additionally, WCI built and/or was responsible for building the home on the Property.

6.    In construction, WCI included drywall throughout the home. Completely unbeknownst to Mr. Hutchings, some or all of the drywall was manufactured in China.

7.    After living in the home for approximately two (2) years and not knowing that there might be any problems with the drywall, Mr. Hutchings attended a homeowner's meeting in April 2009, in which he learned that many of the homes in his community include defective drywall and could lead to substantial damages to his entire residence.

8.    Upon learning this information, Mr. Hutchings promptly investigated and learned that his home indeed contains defective drywall, apparently manufactured in China.

9.    Mr. Hutchings has further learned that dangerous chemicals in the drywall, such as sulfur compounds, have led to separate ensuing losses in his home such as corrosion of copper wires and tubing, ruined air conditioning coils, ruined electrical wiring, water lines, faucets, and major appliances, and the destruction of the entire remainder of the residence.    Mr. Hutchings has, in fact, already had to replace numerous items – some more than once – because of the defective drywall.    The invoices for those repairs and related pictures are attached hereto and incorporated herein as Exhibit "C." The repairs have thus far cost $20,741.99.

10.    Additionally, Mr. Hutchings has learned that he has developed lung complications due to the presence of the defective drywall.    He has also suffered from emotional distress due to the presence of the defective drywall. Mr. Hutchings does not presently have an estimate of expenses and damages attributable to these conditions, but will provide any as they become available.

11.    Because of the foregoing conditions, as a separate ensuing loss, Claimants must have all of the defective drywall removed from the home.    Not only can Mr. Hutchings not live in the home with the drywall; he will not be able to even sell the home until it is certified to be free of Chinese drywall.    Since the drywall is virtually all over the home, the present information indicates that the entire home should be razed in order to remove the drywall, and then the house entirely rebuilt.    The expense for that reconstruction, which is a separate ensuing loss, is estimated to be $1,493,162.29.    A

true and correct copy of that detailed estimate is attached hereto and incorporated herein as Exhibit "B." If it is determined that there is a more efficient way (and there does not appear to be) of addressing the issue, Claimants are amenable to suggestions.

12.     Mr. Hutchings has also been forced to move out of the home to protect his and his family's health. On or about May 7, 2009, Mr. Hutchings entered a one year lease for another home at the rental rate of $4,850.00 per month, which is another separate ensuing loss. A true and correct copy of that lease is attached hereto and incorporated herein as Exhibit "D."

13.     Additionally, Claimants have incurred the separate ensuing loss of attorneys' fees, costs, and expert fees. The attorneys' fees and costs to date are $28,749.47 and the expert fees to date are $3,150.00.

14.     The damages set forth in this Exhibit are subject to change as more damages are incurred and/or more information becomes available.

Debra Osborne
Private Client Group
561 623 4040 Telephone
866 858 9358 Facsimile
Debra.osborne@chartisinsurance.com



November 12, 2009

Mr. Wesley Hutchings
c/o De Beaubien Knight Simmons Mantzaris & Neal LLP
Attn: David H. Simmons
332 N. Magnolia Avenue
Orlando, FL 32801

**Via Facsimile** and
**UPS 2nd Day Air Tracking Number: 1Z E3F 087 37 1000 5337**

Re: Insured:          Wesley Hutchings
    Claim Number:     513660
    Date of Loss:     April 1, 2009 (claimed date)
    Policy Number:    AIG PCG 0001968407
    Policy Period:    4/30/2008 – 4/30/2009
    Loss Location:    7230 Lemon Grass Drive, Parkland, FL 33076
    Writing Company:  American Home Assurance Company

Dear Mr. Hutchings:

American Home Assurance Company, through Chartis Insurance Private Client Group, has concluded its investigation into the above captioned claim for damages to the Hutchings residence involving Chinese manufactured drywall used in the construction of the home.

As part of the investigation, an on-site assessment of the Hutchings home was conducted by Zdenek Hejzlar, Ph.D, CSP of Engineering Systems, Inc., (ESI). Enclosed please find a copy of the ESI report for your records. ESI's investigation confirmed the presence of drywall manufactured in China. Testing of the drywall revealed the presence of sulfur compounds. The sulfur compounds emanating from the Chinese drywall were confirmed to be the primary contributor of corrosion seen on copper and other metals throughout the home. At this time, we direct your attention to ESI's report under the heading entitled Preliminary Findings and Opinions which states as follows:

*The cause and origin of the sulfur based odor in the subject residence is the problematic drywall present in the walls of the residence.*

*The presence of sulfur based compounds being released into the air from the drywall is a primary contributor to the corrosion seen on the copper.*

*At the concentrations seen to date and using the limited toxicological data available,*



*the reduced sulfur compounds identified to date do not appear to be a significant health hazard at this time. State and federal agencies have not determined to date that the materials off-gassing from the drywall including the reduced sulfur compounds are or are not a health threat. Other chemicals that may have been causing and contributing to corrosion, sulfur odor and reported health symptoms have not been fully evaluated at this time.*

*Even at the low concentrations, some of the chemicals are causing offensive odors.*

*The extent of the impact on the various components within the residence has not been determined and is beyond the scope of this portion of the investigation.*

The policy of insurance provides coverage for damages resulting from a covered cause of loss that occurs during the policy period; per the following taken in pertinent part from the policy:

*PART I – DEFINITIONS*

*Occurrence means:*

*a. A loss or an accident, to which this insurance applies, including continuous or repeated exposure to substantially the same harmful conditions, which occurs during the Policy Period and results in personal injury or property damage; or*

*b. An offense, to which this insurance applies, including a series of related offenses, committed during the Policy Period that results in personal injury or property damage.*

The defective drywall installed during the construction, along with the corrosion damage resulting from the sulfur compounds emanating from the drywall are not covered per the following taken in pertinent part from your policy:

*PART II – PROPERTY*

*A. Insuring Agreement*

   *This policy covers you against all risks of direct physical loss or damage to your house, contents and other permanent structures unless an exclusion applies.*

Relative to the dwelling damage, we refer you to the policy number AIG PCG 0001968407, effective April 30, 2008 through April 30, 2009, specifically pages 7 & 8 of PCHO-FL (09/06) which states the following:

*D. Exclusions*

   *The following exclusions apply to the Part II – PROPERTY section of your policy:*

   *1. Pollution or Contamination*

*We do not cover any loss, directly or indirectly, and regardless of any cause or event contributing concurrently or in any sequence to the loss, caused by the discharge, dispersal, seepage, migration or release or escape of pollutants. Nor do we cover the cost to extract pollutants from land or water, or the cost to remove, restore or replace polluted or contaminated land or water. A pollutant is any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. A contaminant is an impurity resulting from the mixture of or contact with a foreign substance. Waste includes materials to be disposed of, recycled, reconditioned or reclaimed.*

2. *Gradual or Sudden Loss*

*We do not cover any loss caused by gradual deterioration, wet or dry rot, warping, smog, rust, or other corrosion. In addition, we do not cover any loss caused by inherent vice, wear and tear, mechanical breakdown or latent defect. However, we do insure ensuing covered loss unless another exclusion applies.*

8. *Faulty Inadequate or Defective Planning*

*We do not cover any loss caused by faulty, inadequate or defective:*

a. *Planning, zoning, development, surveying, siting;*

b. *Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;*

c. *Materials used in repair, construction, renovation or remodeling; or*

d. *Maintenance;*

*of part or all of any property whether on or off the residence.*

*However, we do insure ensuing covered loss unless another exclusion applies.*

As part of your claim, you are also seeking reimbursement for additional living expenses. The policy provides, in pertinent part, as follows:

C. *Additional Coverage*

*These coverages are offered in addition to the amount of coverage shown on the Declarations Page unless stated otherwise. Your deductible applies to these coverages unless stated otherwise. Exclusions are described in Section D. Exclusions and limits of liability, are described in section B.,5. Special Limits of Liability apply to these coverages.*

1. *Additional Living Expense*

*As described below, under certain conditions when your residence cannot be lived in because of a covered loss to your house or, if applicable, your contents, we provide coverage for additional living expenses, which consist of extra living expenses, loss of fair rental value, and forced evacuation expenses. The maximum amount we will pay for all additional living expenses combined for each occurrence is 30% of the house coverage if the residence where the loss occurs is a house; or 30% of the contents coverage if the residence where the loss occurs is a Condominium, Cooperative or apartment.*

a. *Extra Living Expense*

*If a covered loss makes your residence uninhabitable, we cover any reasonable increase in living expenses incurred by you to maintain your household's usual standard of living. Payment will continue for the shortest reasonable amount of time necessary to restore your residence to a habitable condition or for your household to permanently locate elsewhere. If your residence is under construction and you are living in the residence at the time of loss, extra living expenses will cease once you are restored to the condition you were just prior to the loss. We will not pay any interest for loans or increased policy premiums associated with the rebuilding of your home. However, if prior to the loss you are not living in the residence or have moved out because of construction or renovations, then extra living expenses for this location will not apply.*

*We will also pay reasonable expenses associated with the kenneling of your domestic animals only.*

The foregoing policy language requires that in order for there to be coverage under this part, additional living expenses must result from the insured residence being unlivable due to a covered loss to the home or contents. As discussed above, there is no covered loss which would result in coverage for additional living expenses. Finally, you are seeking reimbursement for attorney's fees and expert fees incurred to date. There are no provisions in the policy which provide coverage for these portions of your claim.

Regretfully, American Home Assurance Company is unable to provide coverage for your claim based on the above-referenced policy language.

Neither this letter nor the company's actions in investigating the claim are meant nor should be construed by you as a waiver or modification of any of the terms or conditions of the policy. American Home Assurance Company does not intend to, nor does it waive any term, condition, right, definition, exclusion, endorsement, limitations or defense under the policy or as provided by law. All rights remain reserved under the policy for these and any other questions of coverage that may arise during the investigation. Your rights are also reserved under the policy.

We appreciate your assistance in the handling of your claim. If you have any additional facts that you feel may assist us in our investigation, we would be pleased to review the information.

Sincerely,

Debra Osborne
Sr. Property Claims Analyst
Private client Group, on behalf of American Home Assurance Company

Enclosure

cc:  Scott J. Frank, Butler Pappas Weihmuller Katz Craig LLP

bcc:  LSG Insurance Partners

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD RIVER COUNTY, FLORIDA
CIVIL DIVISION

WESLEY D. HUTCHINGS, an individual,

     Plaintiff,

                                    Case No. 10-46498-02

vs.

AMERICAN HOME ASSURANCE
COMPANY, a foreign corporation,

     Defendant.

_____/



## <u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

Defendant, AMERICAN HONE ASSURANCE COMPANY ("American Home"), by and through its undersigned counsel and in accordance with the Florida Rules of Civil Procedure, hereby files its Motion to Dismiss Plaintiff's Complaint as follows:

1.    Plaintiff, WESLEY D. HUTCHINGS ("Hutchings"), has filed a Complaint seeking recovery under theories of Breach of Contract (Count I) and Declaratory Relief (Count II).

2.    The Complaint is based upon a claim pertaining to damages allegedly sustained by Hutchings at his residence located 7230 Lemon Grass Drive, in Parkland, Broward County, Florida 33076 (the "Insured Premises"), due to the fact that the Insured Premises contain Chinese Drywall.

3.    In accordance with Florida Rule of Civil Procedure 1.130 (a), Hutchings has attached a copy of the insurance contract issued by American Home to Hutchings for the policy period of April 30, 2009 through April 30, 2010, as Exhibit "A" to the Complaint.

4.      In accordance with Florida Rule of Civil Procedure 1.130(b), "any exhibit attached to a pleading shall be considered a part thereof for all purposes."

5.      Plaintiff, Hutchings, has also attached his Sworn Statement in Proof of Loss to the Complaint as Exhibit "B." The Sworn Statement in Proof of Loss establishes that the loss occurred on or about April 7, 2009, which was not during the period of time covered by the insurance contract attached as Exhibit "A."

6.      Based upon the allegations of the Complaint, including the Exhibits attached thereto, there is a failure to state a cause of action, as the loss allegedly occurred at a time not covered by the insurance contract attached to the Complaint.

7.      For the purposes of a Motion to Dismiss, the trial court must consider those exhibits attached to and incorporated into a complaint as part of the allegations of the complaint. *Vienneau v. Metropolitan Life Insurance Company*, 548 So.2d 856 (Fla. 4th DCA 1989); *Harry Pepper & Associates, Inc. v. Lasseter*, 247 So.2d 736 (Fla. 4th DCA 1971).

8.      To the extent that an inconsistency is raised between the general allegations in a complaint and the exhibits attached thereto, this inconsistency will have the effect of neutralizing these allegations and renders the complaint objectionable and subject to a motion to dismiss.  *Hillcrest Pacific Corporation v. Yamamura*, 727 So.2d 1053 (Fla. 4th DCA 1999); *Vienneau v. Metropolitan Life Insurance Company*, 548 So.2d 856 (Fla. 4th DCA 1989); *Harry Pepper & Associates, Inc. v. Lasseter*, 247 So.2d 736 (Fla. 4th DCA 1971).

9.      The inconsistency raised between the allegations fo Plaintiff's Complaint that the loss occurred during the policy period from April 30, 2009 through April 30, 2010, as indicated in the allegations and in Exhibit "A" to the Complaint are specifically contradicted

2

by the Sworn Statement in Proof of Loss attached to the Complaint as Exhibit "B."  This inconsistency establishes that the incorrect insurance contract is attached to the Complaint and that the pleading is objectionable and should be dismissed in accordance with the above-cited case law.

WHEREFORE, Defendant, AMERICAN HOME ASSURANCE COMPANY, respectfully requests that this Court grant its Motion to Dismiss Plaintiff's Complaint and any and all such further relief as this Court may deem just and proper.

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

SCOTT J. FRANK, ESQ.
Florida Bar No.:  0775606
777 S. Harbour Island Boulevard
Suite 500
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
sfrank@butlerpappas.com
Attorneys for Defendant
AMERICAN HOME ASSURANCE COMPANY

3

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy hereof has been furnished to David H. Simmons, Esquire, Daniel J. O'Malley, Esquire and Jeffrey S. Elkins, Esquire at de Beaubien , Knight, Simmons, Mantzaris & Neal, LLP, 332 North Magnolia Avenue, Post Office Box 87, Orlando, Florida 32802-0087

by U.S. Mail on January 10, 2011.

SCOTT J. FRANK, ESQ.

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD RIVER COUNTY, FLORIDA
CIVIL DIVISION

WESLEY D. HUTCHINGS, an individual,

    Plaintiff,

                                  Case No. 10-46498-02

vs.

AMERICAN HOME ASSURANCE
COMPANY, a foreign corporation,

    Defendant.

_____/

### DEFENDANT, AMERICAN HOME ASSURANCE COMPANY'S
### NOTICE OF FILING NOTICE OF REMOVAL OF CIVIL ACTION

    You will please take notice that on January 12, 2011, the Defendant, AMERICAN HOME ASSURANCE COMPANY, filed with the Clerk of the United States District Court for the Southern District of Florida, Fort Lauderdale Division, pursuant to CM/ECF Electronic Filing, a Notice of Removal pursuant to 28 U.S.C. §§ 1441-1452.  A copy of the Notice of Removal and Notice of Filing Notice of Removal are attached hereto as Composite Exhibit "A" and is incorporated by reference.

    AMERICAN HOME ASSURANCE COMPANY respectfully requests that this Court proceed no further with this action, unless and until this action is remanded to State Court. Absent the entry of a remand order by the United States District Court for the Southern District of Florida, Fort Lauderdale Division, this Court is divested of jurisdiction in this case and is thereby requested to stay all further proceedings in accordance with 28 U.S.C. §1446(d).

    Specifically, this Court is presently without power or authority to enter any orders, conduct any hearings, or take any other action with respect to this litigation.



tabbies®

**EXHIBIT**

3

1

You are further hereby notified that this Notice of Filing Notice of Removal incorporates by reference all of the requirements of 28 U.S.C. § 1446.

Dated this 12th day of January, 2011.

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

SCOTT J. FRANK, ESQUIRE
Florida Bar No. 775606
777 S. Harbour Island Boulevard
Suite 500
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
sfrank@butlerpappas.com
Attorneys for Defendant
AMERICAN HOME ASSURANCE COMPANY

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to David H. Simmons, Esquire, Daniel J. O'Malley, Esquire and Jeffrey S. Elkins, Esquire at de Beaubien , Knight, Simmons, Mantzaris & Neal, LLP, 332 North Magnolia Avenue, Post Office Box 87, Orlando, Florida 32802-0087

by U.S. Mail on January 12, 2011.

SCOTT J. FRANK, ESQ.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

WESLEY D. HUTCHINGS, an individual,

     Plaintiff,

vs.

AMERICAN HOME ASSURANCE
COMPANY, a foreign corporation,

     Defendant.

_____/

Case No.

Circuit Court Case No.: 10-46498-02

## DEFENDANT'S NOTICE OF REMOVAL

COMES NOW the Defendant in this action, AMERICAN HOME ASSURANCE COMPANY ("American Home"), by and through its undersigned counsel and pursuant to 28 U.S.C. § 1441 *et seq.*, hereby removes that certain cause of action now pending in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, styled *WESLEY D. HUTCHINGS v. AMERICAN HOME ASSURANCE COMPANY*, Case No. 10-46498-Div. 02, to the United States District Court for the Southern District of Florida, Fort Lauderdale Division. In support of this Notice of Removal, American Home states and respectfully shows unto this Honorable Court as follows:

1.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332.

2.    This is a civil action brought by Plaintiff, Wesley D. Hutchings ("Hutchings"), seeking recovery pursuant to theories of breach of contract (Count I) and declaratory relief (Count II) regarding a claim submitted pursuant to an insurance contract between the parties and compliance with the terms and conditions of that insurance contract.



EXHIBIT

A

3.      At the time the action was commenced, at the present time, and at all times material to this action, Hutchings was a sui juris individual located in Broward County, Florida.

4.      At the time this action was commenced, at the present time, and at all times material to this action, American Home was, and is a foreign corporation organized and existing pursuant to the laws of the state of New York and with its principal place of business located in the State of New York.

5.      At no time material to this action were Hutchings and American Home citizens of the same state.

6.      American Home's insured in this matter, was a Florida resident at the time of the incident.  While 28 U.S.C. §1332(c)(1) provides in pertinent part that:

> ...in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business...

However, the federal courts have determined that this section, determining citizenship of an insurer only applies in those cases where the direct action brought against the insurer are the same actions which would, *and could*, be brought against the insured.  (Emphasis added).  *See Bowers v. Continental Ins. Co.* 753 F.2d 1574 (11th Cir. 1985); *Searles v. Cincinnati Ins. Co.* 998 F.2d 728 (9th Cir. 1993).  In this matter, the allegations set forth in the Complaint are by the insured and therefore the case is proper for removal in accordance with 28 U.S.C. §1332, as complete diversity exists between Hutchings and American Home.

2

6.      On or about December 6, 2010, this action was commenced in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, against American Home. On December 16, 2010, Hutchings served its Complaint on the State of Florida Department of Financial Services. On December 20, 2010, the State of Florida Department of Financial Services electronically delivered a copy of the Complaint and Summons to American Home. A copy of the Summons from the State of Florida Department of Financial Services is attached hereto and incorporated herein by this reference as Exhibit "1". This Notice of Removal is filed within thirty (30) days after American Home was served with a copy of Hutchings' Complaint from the State of Florida Department of Financial Services.

7.      Hutchings' Complaint, concerns a claim filed regarding damages alleging arising from the installation of "Chinese Drywall" within the home occupied by Hutchings. The Sworn Statements in Proof of Loss Submitted by Hutchings is for the total amount of One Million Six Hundred One Thousand Five Hundred Three Dollars and 65/100 ($1,601,503.65).    A copy of the Sworn Statement in Proof of Loss is attached to the Plaintiff's Complaint as Exhibit "B". Accordingly, the amount in controversy herein exceeds $75,000 exclusive of interest and costs .

8.      The pendant state claim asserted by Hutchings does not raise novel and complex issues of state law. The pendant state claim does not substantially predominate over the claim or claims over which this Court has original jurisdiction. The claims over which this Court has original jurisdiction have not been dismissed. And, there are no other compelling reasons for this Court to reject jurisdiction over the pendant state claim, or to abstain from hearing the diversity claims.

3

9.      Copies of all pleadings and orders served upon or by American Home are attached hereto as Composite Exhibit "2" consisting of the Complaint, and Defendant's Motion to Dismiss Plaintiff's Complaint.

10.      Pursuant to 28 U.S.C. § 1446(d), American Home has provided written notice to all adverse parties and has filed a copy of this Notice of Removal with the Clerk of the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida.

11.      A copy of the Notice of Filing Notice of Removal filed with Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida is attached hereto as Exhibit "3."

**WHEREFORE**, Defendant, AMERICAN HOME ASSURANCE COMPANY, respectfully requests  this Honorable Court exercise jurisdiction over this matter.


Respectfully submitted,


BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP


s/ Scott J. Frank
SCOTT J. FRANK, ESQ.
Florida Bar No.:  0775606
777 S. Harbour Island Boulevard
Suite 500
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:   (813) 281-0900
sfrank@butlerpappas.com
Attorneys for Defendant,   A M E R I C A N   H O M E
ASSURANCE COMPANY

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy hereof has been furnished to David H. Simmons, Esquire, Daniel J. O'Malley, Esquire and Jeffrey S. Elkins, Esquire at de Beaubien , Knight, Simmons, Mantzaris & Neal, LLP, 332 North Magnolia Avenue, Post Office Box 87, Orlando, Florida 32802-0087

by U.S. Mail on January 12, 2011.

<u>s/ Scott J. Frank</u>
SCOTT J. FRANK, ESQ.